Opinion issued February 11, 2016



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00436-CV

————————————

**THE CITY OF FRIENDSWOOD
AND KEVIN HOLLAND, Appellants**

**V.**

**PAUL AND CAROLYN HORN, MIKE AND LUCY STACY,
PETE AND JUDY GARCIA, AND JANICE FRANKIE, Appellees**

On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Case No. 14-CV-0490

## O P I N I O N

After Tropical Storm Allison destroyed the Imperial Estates Section One subdivision, the City of Friendswood acquired most of the subdivision's 42 lots through a federally-subsidized flooding mitigation program. The program required

the local government to use the subsidy to buy out homeowners and then leave the lots—purchased with the subsidy funds and within the federally and state declared disaster areas—as open space for the public benefit. The owners of four of the 42 lots declined to participate in the program. These homeowners, Paul and Carolyn Horn, Mike and Lucy Stacy, Pete and Judy Garcia, and Janice Frankie, rebuilt their homes. The surrounding lots remained undeveloped.

About 10 years later, the City decided to develop the property it had acquired into a public park, within the parameters of the uses permitted by federal regulation. The plans for a park did not comport with the subdivision's original deed restrictions, which contemplate residential development only. The City then amended the restrictions as to its 38 lots.

The homeowners sued the City and its mayor, Kevin Holland, challenging their actions to develop the City's property. The homeowners sought declaratory relief based on a breach of the subdivision's original deed restrictions and damages for claims of misrepresentation, inverse condemnation, and nuisance. The City and Mayor Holland filed a plea to the jurisdiction in the trial court, contending that governmental and official immunity bar the homeowners' suit. The trial court denied the plea, and the City and Mayor Holland appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5). Because the City is immune from the

2

homeowners' suit, we vacate the trial court's order and dismiss the suit for lack of subject-matter jurisdiction.

## BACKGROUND

### I. Friendswood's acquisition of property in Imperial Estates

Imperial Estates Section One was platted in 1958, bordering on Clear Creek. In June 2001, Tropical Storm Allison caused catastrophic flooding in the area, which severely damaged or destroyed the then-existing homes in the subdivision. The federal and state governments declared the subdivision a natural disaster area. As a result, federal funds became available through the Federal Emergency Management Agency (FEMA). FEMA in turn subsidized a buyout of private property through a hazard mitigation program. The State of Texas and the local governments in areas subject to severe or repetitive flooding administered the program. Using these funds, the City of Friendswood acquired the flood-devastated properties in Imperial Estates from all but the homeowners who bring this suit.

Through its Federal Insurance and Mitigation Administration, FEMA manages both the federal flood insurance and hazard mitigation programs, which are programs designed to reduce or eliminate the long-term risk to people and property from natural hazards. The goal of these programs is to reduce the impact of flooding on private and public structures through (1) providing affordable

3

insurance for property owners; (2) encouraging communities to adopt and enforce floodplain management regulations, and (3) promoting and subsidizing state and local hazard mitigation.[1]  States may apply for federal hazard mitigation funds and qualify for those funds based on an approved state mitigation plan.  44 C.F.R. 206.435(a).  The State "establishes procedures and priorities for the selection of mitigation measures" for distribution of those funds to local governments.  44 C.F.R. § 206(b).

Commensurate with the hazard mitigation program's goals, federal law conditions receipt of funding on limiting the property's use to open space for the public benefit.  *See* 42 U.S.C. § 5170c(b)(2)(B)(i).  The governmental entity using the FEMA subsidy to buy property under the program must agree that:

> (ii) no new structure will be erected on property acquired, accepted or from which a structure was removed under the acquisition or relocation program other than —
>
> > (I) a public facility that is open on all sides and functionally related to a designated open space;
> >
> > (II) a rest room; or
> >
> > (III) a structure that the [FEMA] Director approves in writing before the commencement of the construction of the structure.

42 U.S.C. § 5170c(b)(2)(B)(ii).

---

[1]  FEMA, FEDERAL INSURANCE AND MITIGATION ADMINISTRATION, *What We Do*, http://www.fema.gov/what-mitigation/federal-insurance-mitigation-administration (last visited Jan. 8, 2016).

The restrictions imposed permit the property to be used for

> [p]arks for outdoor recreational activities; wetlands management; nature reserves; cultivation; grazing; camping (except where adequate warning time is not available to allow evacuation); unimproved, unpaved parking lots; [and] buffer zones . . . .

44 C.F.R. § 80.19(a)(1). But they prohibit the property's use for

> [w]alled buildings, levees, dikes, or floodwalls, paved roads, highways, bridges, cemeteries, landfills, storage of any hazardous or toxic materials, above or below ground pumping and switching stations, above or below ground storage tanks, paved parking, off-site fill or other uses that obstruct the natural and beneficial functions of the floodplain.

*Id.* § 80.19(a)(1)(i). By accepting the subsidy, the State of Texas authorized FEMA to periodically inspect the subsidized property. *See id.* § 80.19(c)–(e). If FEMA finds a violation of the use restrictions, it may enforce the terms of the grant by withholding future FEMA assistance from the state and the local governments; by requiring transfer of title and a return to compliance; or by bringing suit against the grantee. *Id.*

## II.     The Deed Restrictions

The 1958 deed restrictions for Imperial Estates dictated that lots were dedicated "for residential purposes only." The restrictions expressly prohibit the development of any lots for "hospital, clinics, duplex houses, apartment houses, [or] hotel[s] . . . [or other] commercial [or] professional uses. . . ."

The deed restrictions contain a procedure for their amendment. After July 1, 1983, they may be

> altered, amended and changed at any time by a written instrument duly executed and acknowledged by a majority of the record lot owners in this subdivision (provided, however, each lot shall have one vote irrespective of the number of record owners) and recorded in the deed records of Galveston County, Texas. The said covenants, restrictions and conditions shall continue in full force and effect subject to the aforesaid right of amendment, alteration, or change for successive ten year periods unless the majority of record lot owners in said entire Imperial Estates Section One Subdivision shall, by the procedure outlined above, elect to terminate the same.

Approximately 12 years after the City acquired the 38 lots in Imperial Estates through the FEMA-subsidized program, the City Secretary gave public notice and posted the agenda of a regular meeting of the City Council to be held July 3, 2013. Item 14 of the posted agenda stated: "Discussion and possible action regarding approving an instrument to amend the deed restrictions for Imperial Estates Section One." The July 3 meeting minutes reflect that the "proposed amendments are to ensure no confusion regarding the City's right to create parkland on the property." After discussion, the City Council passed the following amendments:

> 2 RESTRICTIONS.

> 2 1 Allowable lot Use and Buildings. All lots and improvements shall be maintained in perpetuity for uses compatible with open space, recreational or wetlands management practices.

6

2 2 No new structures will be built on the property except as indicated below:

> (a) a public facility that is open on all sides and functionally related to a designated open space or recreational use,

> (b) a rest room, and

> (c) a structure that is compatible with open space, recreational, or wetlands management usage and proper floodplain management policies and practices, which the Director of the Federal Emergency Management Agency (FEMA) or an official to whom the Director of FEMA has expressly delegated authority to issue rules, before the construction of the structure begins.

On the document, the City, through Mayor Holland, attested: "the undersigned, being the owner of the requisite number of lots in the subdivision, hereby amends the Deed Restrictions applicable to [Imperial Estates]." The City Secretary also signed the amendments, and they were filed with the Galveston County Clerk on July 8, 2013. None of the homeowners attended the meeting or participated in the vote to amend the deed restrictions.

## DISCUSSION

The homeowners contend that the City and Mayor Holland are not immune from this lawsuit because (1) the City's actions with regard to the lots were proprietary in nature and not governmental; and (2) even if the City's actions were governmental in character, the homeowners' claims for inverse condemnation and nuisance are not barred by governmental immunity.

## I.    Standard of Review

If a governmental unit has immunity from a claim pending against it, then a trial court lacks subject-matter jurisdiction as to that claim. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). The governmental unit may challenge the trial court's subject-matter jurisdiction by asserting a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *see City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). In a plea to the jurisdiction, a party may challenge the pleadings, the existence of jurisdictional facts, or both. *Miranda*, 133 S.W.3d at 226–27. A trial court's ruling on a plea to the jurisdiction is a question of law that we review de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *see Miranda*, 133 S.W.3d at 228.

When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating the court's jurisdiction. *Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Id.* The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction. *Id.* at 226–27. If they do neither, it is an issue of pleading sufficiency and the court should give the plaintiff an opportunity to amend the pleadings. *Id.* If, however, the pleadings affirmatively negate the existence of jurisdiction, then the court may

grant a plea to the jurisdiction without giving the plaintiff an opportunity to amend. *Id.* at 227.

When the governmental unit challenges the existence of jurisdictional facts, and the parties submit evidence relevant to the jurisdictional challenge, we consider that evidence when necessary to resolve the jurisdictional question. *Id.* The standard of review for a jurisdictional plea based on evidence mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). When reviewing the evidence, we must "'take as true all evidence favorable to the nonmovant' and 'indulge every reasonable inference and resolve any doubts in the nonmovant's favor.'" *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d. at 228). If the evidence creates a fact issue as to the jurisdictional issue, then the fact-finder will decide that issue. *Kirwan*, 298 S.W.3d at 622 (citing *Miranda*, 133 S.W.3d. at 227–28). If the relevant evidence is undisputed or fails to raise a fact question, then a court should resolve the plea to the jurisdiction as a matter of law. *Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d. at 228. The burden is on the plaintiff to establish subject-matter jurisdiction by showing that the entity has waived immunity from suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993).

## II. Governmental Immunity

### A. Proprietary v. Governmental Function

We first examine whether the actions that form the basis of the homeowner's claims—namely, the City's acquisition of the 38 subdivision lots and the development of the park—constitute proprietary or governmental functions. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006).

When performing governmental functions, a political subdivision derives governmental immunity from the state's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Governmental immunity encompasses the following two principles: (1) immunity from suit, which precludes a lawsuit against the entity unless the Legislature has expressly consented to the suit, and (2) immunity from liability, which precludes a judgment against the government even if the Legislature has expressly consented to the suit. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011); *see Williams*, 353 S.W.3d at 134.

Immunity applies to governmental functions, or functions "in the performance of purely governmental matters solely for the public benefit." *Tooke*, 197 S.W.3d at 343 (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215 (West 2011 & Supp. 2015) (defining as governmental functions "those functions that are enjoined on a

municipality by law and are given it by the state as part of the state's sovereignty"); *see also City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[G]overnmental functions encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute."), *quoted in City of Houston v. Downstream Envt'l, L.L.C.*, 444 S.W.3d 24, 34 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

If a governmental entity is engaged in a proprietary function, immunity is unavailable; the governmental entity may be sued and can be held liable to the same extent as a private entity or individual. *See Tooke*, 197 S.W.3d at 343 ("A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions."). "[G]enerally speaking, a municipality's proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government.'" *Id.* (quoting *Dilley*, 222 S.W.2d at 993).

The City claims that it was performing a quintessentially governmental function in acquiring the lots and amending the deed restrictions to comport with its plans to develop the property as a municipal park. An examination of the City's actions reveals that the City is correct.

11

The City acquired the lots after a catastrophic flooding event expressly for the purpose of hazard mitigation; it amended the deed restrictions to incorporate FEMA's subsidy restrictions and reversionary interest in the land, and to develop a park. Thus, the City's actions were in furtherance of flood control and public park development, which are governmental functions as a matter of law. The Texas Tort Claims Act identifies parks, recreational facilities, flood control, and "zoning, planning and plat approval" as governmental functions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(9), (13), (19), (23), (29), (30) and (32). The City's acquisition of the Imperial Estates lots involves these functions. Because the Legislature has designated these activities to be governmental functions, their character as governmental functions is conclusively established. *See id.*; *Downstream Envt'l*, 444 S.W.3d at 33 (declaring that court has no discretion to determine that activity is proprietary if state statute designates it as governmental); *see also Benefit Realty Corp. v. City of Carrollton*, 141 S.W.3d 346, 349 (Tex. App.—Dallas 2004, pet. denied) (observing that "[a]cquisition of land for a public purpose is a governmental function," as is its redevelopment or use for park or recreational purposes) (citing *Leeco Gas & Oil Co. v. Nueces Cty.*, 736 S.W.2d 629, 630 (Tex. 1987)).

There is no dispute in the record that the City's purpose here was flood mitigation, and secondarily, public parks and recreation. Both federal and state

laws permit and provide incentives for local governments to take measures to mitigate the potential for loss of life and property from future flood events. *See* 42 U.S.C. § 4104c (anticipating that states and communities will use funds made available from National Flood Mitigation Fund to plan and carry out activities designed to reduce risk of flood damage to structures covered under contracts for federal flood insurance); TEX. WATER CODE ANN. § 16.315 (West 2008) (entitled "Political Subdivisions; Compliance with Federal Requirements" and authorizing political subdivisions "to take all necessary and reasonable actions that are not less stringent than the requirements and criteria of the National Flood Insurance Program," including "[m]aking appropriate land use adjustments to constrict the development of land which is exposed to flood damage and minimize damage caused by flood losses," "engaging in floodplain management, adopting and enforcing permanent land use and control measures," and "participating in floodplain management and mitigation initiatives . . . developed by federal, state or local government").

The homeowners respond that, regardless of the ultimate public purpose, the City's amendment of the Imperial Estates deed restrictions was itself a proprietary rather than a governmental act. They observe that the City Council minutes reflect that the City amended the restrictions as the "owner of the requisite number of lots in the subdivision."

The amendment's character, however, is purely governmental. It comports with the statutory terms and conditions the City agreed to in accepting the federal subsidy: to maintain the property for "uses compatible with open space, recreational or wetlands management practices." *See* 42 U.S.C. § 5170c(b)(2)(B)(i) (requiring applicant for hazard mitigation assistance to enter into "an agreement with the Administrator that provides assurances that any property acquired, accepted, or from which a structure will be removed pursuant to the project will be dedicated and maintained in perpetuity for a use that is compatible with open space, recreational, or wetlands management practices"); *see also Petroleum Traders Corp.*, 261 S.W.3d at 356 ("[G]overnmental functions encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute."), *quoted in Downstream Envt'l*, 444 S.W.3d at 34. Because the amendment is consistent with the defined and statutorily-required public purpose designated for flood mitigation acquisitions, the City acted in a governmental capacity when it amended the deed restrictions to conform to the state-imposed mitigation restrictions associated with the land acquisition. At the State's direction, the City used FEMA subsidies to acquire the lots for hazard mitigation and, as a result, restricted the City's ability to use the property save for open space, recreational, or wetlands management uses. Those statutory conditions foreclose the property's use for residential purposes, in that

14

nothing other than an open-sided structure or a restroom facility may be built on it. *See* 42 U.S.C. § 5170c(b)(2)(B)(ii). Accordingly, we hold that the City's activities with respect to the land acquisition and deed restriction amendment affecting the acquired property were governmental functions. The general presumption that the City is immune from suit therefore applies. *See Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 848 (Tex. 2009); *City of Pasadena v. Thomas*, 263 S.W.3d 43, 45 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

### B. Inverse Condemnation and Nuisance Claims

We next examine whether the homeowners have properly pleaded or adduced evidence that overcomes the City's plea of governmental immunity in support of their inverse condemnation and nuisance claims.

#### 1. A takings claim may be based on a covenant running with the land.

The City does not have immunity from a valid takings claim. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *City of Houston v. Guthrie*, 332 S.W.3d 578, 591–92 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). To properly plead an inverse condemnation claim requires the homeowners to allege that the City intentionally performed an act in the exercise of its lawful authority that denies the homeowners the use of their property, renders it valueless, or unreasonably interferes with their right to use and enjoy the property. *See Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 671–73 (Tex.

15

2004); *Cernosek Enters. v. City of Mont Belvieu*, 338 S.W.3d 655, 662 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In an inverse condemnation suit, the question of whether a taking has occurred is a legal one. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932 (Tex. 1998).

In this case, the City purchased lots adjoining the homeowners' property. The homeowners do not contend that the City has entered their private property. Rather, they contend that the City's unilateral amendment of the deed restrictions to allow for its lots to become a public park impairs the use and value of their adjoining property. Thus, we must first determine whether an adjoining landowner has a cause of action for a taking when a government unilaterally amends, or fails to comply with, a deed restriction covenant that runs with the land.

We addressed a similar issue in *Harris County Flood Control District v. Glenbrook Patiohome Owners Association*, 933 S.W.3d 570 (Tex. App.—Houston [1st Dist.] 1996, writ denied). In that case, the flood control district purchased from their individual owners 20 patio homes in two buildings for the purpose of widening and straightening an adjacent bayou. *Id.* at 573.

A declaration of covenants, conditions, and deed restrictions burdened the properties acquired by the district. *Id.* The declaration provided that the Glenbrook Patiohome Owners Association owned an easement in the common area that was appurtenant to the title of each unit and was responsible for the area's

maintenance. *Id.* The declaration empowered Glenbrook to enforce covenants and deed restrictions and to charge and collect assessments for maintenance, water, sewer service, and insurance, as well as special assessments for capital improvements. *Id.*

The district refused to pay maintenance assessments on the units it purchased and went forward with its plan to raze the homes to make way for bayou improvements. When Glenbrook learned of the district's plan, it sued for, among other things, the unpaid assessments. *Id.* Glenbrook contended that it was entitled to the unpaid assessment fees through a lien or as compensation under an inverse condemnation theory. *Id.* at 574.

We held that covenants and deed restrictions contained in the declaration ran with the properties that the district had purchased, and that "the right to require that all property owners pay assessment fees is an inherent property right owned by the remaining patiohome owners. . . ." *Id.* at 577. The district extinguished Glenbrook's assessment fee rights when it purchased the patio homes and refused to pay the fees, giving rise to Glenbrook's right to bring an inverse condemnation suit against the district. *Id.* at 578.

Our analysis in *Glenbrook* relied on the Texas Supreme Court's decision in *Leeco Gas & Oil*. *See Glenbrook*, 933 S.W.2d at 576 & n.1. In *Leeco*, the company deeded 50 acres of land to Nueces County, expressly made subject to a

17

reversionary interest, which allowed the County to keep the property "so long as a public park is constructed and actively maintained by the County" on it. 736 S.W.2d at 630. In 1983, the County instituted a condemnation proceeding against Leeco's reversionary interest. *Id.* The Court held that the reversionary interest was a property interest that required compensation. *Id.* at 636.

The Supreme Court recently endorsed *Leeco*'s holding in in *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798 (Tex. 2013). *El Dorado* arose out of the land company's sale of several acres to the City of McKinney subject to the requirement that the land be used as a community park. *Id.* at 799. The deed provided that if the City decided not to use the property as a park, El Dorado retained the right to purchase the property. *Id.* When El Dorado discovered 10 years later that the City had built a public library on the land without informing El Dorado, El Dorado notified the City that it intended to exercise its option to purchase and asked the City to acknowledge its obligations under the deed. *Id.* When the City failed to do so, El Dorado sued for inverse condemnation. *Id.*

The City contended in its plea to the jurisdiction that El Dorado's interest was a contract right and, because the deed lacked an express waiver of governmental immunity, the option was unenforceable. *Id.* at 799–800. In rejecting the City's contention, the Court determined that El Dorado's right to purchase the property was in the nature of a reversionary interest in real property

18

and, accordingly, was protected by the Takings Clause. *Id.* at 801. Following *Glenbrook*, *Leeco*, and *El Dorado*, we hold that the deed restrictions in this case comprise a property interest held by the homeowners because they are in the nature of covenants that run with the land. Thus, we turn to whether the homeowners have asserted a cognizable takings claim.

### 2. The facts adduced do not constitute a taking based on substantial impairment of the use and enjoyment of the property or of market value.

Assuming that the City's unilateral amendment of the deed restrictions failed to comply with the requirement that a majority of the lot owners approve the amendments, we conclude that the homeowners have not pleaded or adduced evidence that the City's disregard of the deed restriction was a taking of their adjoining land, either at the time the City purchased the property, or when the City amended the deed restrictions.

The homeowners' live pleading does not allege that any diminution in the value of their lots occurred when the City acquired the Imperial Estates lots in 2001. Rather, the homeowners allege that the City's decision to place a park adjacent to their property 10 years later impairs the peaceable use and enjoyment of their property by changing the character of their subdivision to cause an increased flow of vehicles, pedestrians, and public gatherings.

These allegations cannot support an inverse condemnation claim for compensation. The City's decision to maintain property that it owns as green space or to develop it as a park for public use does not, as a matter of law, result in a taking of neighboring property if increased vehicle and pedestrian traffic in the nearby area is the allegation of interference. The Texas Supreme Court has made clear that "an abutting property owner does not have a vested interest in the traffic that passes in front of his property." *DuPuy v. City of Waco*, 396 S.W.2d 103, 109 (Tex. 1965), *quoted in State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993). Thus, increased traffic and noise to a community do not give rise to a compensable taking. *See Felts v. Harris Cty.*, 915 S.W.2d 482, 485 (Tex. 1996) (substantial increase in noise from highway not taking); *Alewine v. City of Houston*, 309 S.W.3d 771, 779–80 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (increased noise from nearby airport overflights not taking "absent a showing by individual homeowners that their houses are no longer usable for residential purposes") (citing *City of Austin v. Travis Cty. Landfill Co.*, 73 S.W.3d 234, 244 (Tex. 2002)); *State v. Momin Props., Inc.*, 409 S.W.3d 1, 7–8 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (no taking where new overpass diverted traffic away from gas station). Consistent with this authority, we hold that the homeowners' allegations of activities on the adjoining property do not give rise to a cognizable takings claim, because the alleged activities do not amount to a

20

substantial impairment or deprivation of the homeowners' land as a matter of law. *See Felts*, 915 S.W.2d at 485; *see also City of Houston v. Wynne*, 279 S.W. 916, (Tex. Civ. App.—Galveston 1925) (holding that deed restrictions limiting land use to residential purposes did not void City's decision to construct fire station on lots adjacent to homeowners because "in the absence of any unjustified entry upon land . . . the construction and maintenance of a public improvement under legislative authority in such manner as to inflict an injury upon adjacent land . . . is not a taking of such land, unless the owner is substantially ousted and deprived of all beneficial use of the land affected."), *writ ref'd,* 281 S.W. 544 (Tex. 1926) (per curiam).

The homeowners' nuisance claim is premised on the same allegations as their inverse condemnation claim. The City can be liable for a nuisance (1) when it rises to the level of a constitutional taking or (2) when it arises from a governmental unit's proprietary function. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004). The homeowners' failure to allege a constitutional taking requires the conclusion that the homeowners' pleadings fail to allege a waiver of immunity for the plaintiffs' nuisance claim. *See id.*

**C. Declaratory Relief and Breach of Contract Claims**

The homeowners' construe the original deed restrictions to provide that the City had fewer votes than the homeowners collectively and, based on that

21

construction, have sued to declare the deed restriction amendment invalid and the City liable for breach of contract. We have assumed for the purposes of the homeowners' takings claims that the subdivision's covenants did not authorize the unilateral amendment of the deed restrictions by less than a majority of the remaining owners. To the extent that the homeowners' breach of contract claim seeks a recovery separate from a takings claim, however, the City is squarely immune from suit absent express legislative authority granting a waiver of that immunity. *See* TEX. GOV'T CODE ANN. § 311.034 (West 2013). Claims that seek to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State that attempt to control state action, and from which the State is therefore protected from liability by sovereign immunity. *Satterfield & Pontikes Constr., Inc. v. Tex. S. Univ*., 472 S.W.3d 426, 431–32 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing, *inter alia*, *Tex. Natural Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855–56 (Tex. 2002)). To the extent the homeowners seek injunctive relief or specific performance to enforce the deed restrictions, these claims for relief may not be brought against a governmental unit. *See Wynne*, 281 S.W. at 544 (refusing application for writ of error, noting that "no valid contract could be made which would restrict the right on the part of the municipal authorities to exercise the police power of constructing and maintaining fire stations, and the contracts in this case cannot be properly

22

construed as having the purpose to set aside, nullify, or prevent the exercise of governmental authority.").

Section 271.152 of the Local Government Code waives a qualifying local governmental entity's immunity from suit for written contracts "stating the essential terms of the agreement for providing goods or services to the local government entity." *Tooke*, 197 S.W.3d at 345; *see* TEX. LOCAL GOV'T CODE ANN. § 271.152(2) (West 2005). Because the deed restrictions do not involve the provision of goods or services, section 271.152 does not waive the City's immunity. The homeowners cite no other basis for waiver.

The Declaratory Judgment Act waives a governmental entity's immunity for a declaration construing an ordinance or statute. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010). The DJA does not, however, create subject-matter jurisdiction where there is none. *See Sawyer Trust*, 354 S.W.3d at 388. Just as the City retains its immunity from suit on the homeowners' breach of contract claim, it is immune from suit on their claim for declaratory relief challenging the validity of the City's performance under that contract. *See Mustang Special Util. Dist. v. Providence Vill.*, 392 S.W.3d 311, 315–16 (Tex. App.—Fort Worth 2012, no pet.) (citing *Sawyer Trust*, 354 S.W.3d at 388).

**D. Misrepresentation Claim**

The homeowners allege that they instituted their suit against the City in November 2012 in an attempt to bar the City from amending the Imperial Estates deed restrictions or from developing the property for other than residential purposes, only to be told that the City had not taken any action to accomplish either. In response, the homeowners dismissed their suit without prejudice. Two months later, however, the City issued the amended deed restrictions. The homeowners claim that the City misrepresented in the first lawsuit that it had taken no action to develop a park on the property when it planned to do so. The homeowners allege to have relied on this statement to their detriment, as the City then amended the deed restrictions without their knowledge or consent.

A governmental entity like the City of Friendswood is generally immune from tort liability, and a claim for misrepresentation is an intentional tort claim. *See Ethio Express Shuttle Serv. v. City of Houston*, 164 S.W.3d 751, 757–58 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of Fort Worth v. Pasturek Indus., Inc.*, 48 S.W.3d 366, 372 (Tex. App.—Fort Worth 2001, no pet.). The Tort Claims Act provides a limited waiver of governmental immunity for claims of property damage, personal injury, or death proximately caused by the wrongful or negligent conduct of a governmental employee arising out of: (1) the use of publicly-owned motor-driven equipment or a motor vehicle, (2) premises defects, and

24

(3) conditions or uses of certain property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) (West 2011); *Garcia*, 253 S.W.3d at 655–56; *Miranda*, 133 S.W.3d at 224–25; *City of Houston v. Boyle*, 148 S.W.3d 171, 179 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Likes*, 962 S.W.2d at 494). The Act declares that the State does not waive immunity for claims arising out of intentional torts. TEX. CIV. PRAC. & REM CODE ANN. § 101.057(2) (West 2011); *Harris Cty. v. Cabazos*, 177 S.W.3d 105, 109 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Thus, the homeowners' misrepresentation claim does not come within any of the enumerated exceptions to the general rule of immunity. *See Ethio Express*, 164 S.W.3d at 757–58 (concluding that misrepresentation claim did not fall within waiver of immunity); *Pasturek Indus.*, 48 S.W.3d at 372 (same).

### E. Official Immunity and Mayor Holland

Finally, the homeowners seek declaratory relief against the City and bring an ultra vires claim against Mayor Holland pursuant to the Open Meetings Act, alleging that they failed to provide the requisite notice before amending the deed restrictions. *See* TEX. GOV'T CODE ANN. § 551.041 (West 2012 & Supp. 2015). The undisputed evidence in the record conclusively establishes timely posting, and the minutes of the July 2013 City Council meeting reflect that it was considered in compliance with the Open Meetings Act's requirements. The homeowners' brief does not respond to this argument on its merits. Accordingly, we hold that the

25

record fails to state a violation of the Open Meetings Act, and this claim provides no basis for subject-matter jurisdiction over the City or Mayor Holland.

## CONCLUSION

Because the homeowners have not alleged a cognizable takings claim, we hold that the trial court erred in denying the City of Friendswood and Mayor Holland's plea to the jurisdiction. We therefore vacate the trial court's order denying the plea to the jurisdiction and dismiss the case for lack of subject matter jurisdiction.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.