

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00658-CV

Michael R. **VOORHIES** and Norelle Voorhies,
Appellants

v.

**TOWN OF HOLLYWOOD PARK, TEXAS**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-02380
Honorable Antonia Arteaga, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                  Beth Watkins, Justice
                  Lori I. Valenzuela, Justice

Delivered and Filed: November 1, 2023

AFFIRMED

Appellants Michael R. Voorhies and Norelle Voorhies (collectively, the Voorhies parties) appeal the trial court's order granting appellee Town of Hollywood Park, Texas's plea to the jurisdiction. We affirm the trial court's order.

## BACKGROUND

In 1969, the Hollywood Park Recreation Club, Inc. conveyed a tract of land to the Town. The deed conveying the land required the Town to name the property "the E.E. Voigt Park" and use it for "recreational purposes only[.]" The Town contends—and the Voorhies parties do not

dispute—that the land now known as Voigt Park includes a "swimming pool, tennis courts, and other park facilities." In May of 2017, the Town opened a publicly financed facility called the Voigt Center in Voigt Park. In September of the same year, the Voorhies parties purchased a home near the Voigt Center.

In 2022, the Voorhies parties sued the Town, alleging it did not use the Voigt Center for "recreational purposes only" because it generated revenue by leasing the facility to private individuals for weddings, parties, and other events. The Voorhies parties further alleged that noise caused by these events and the Town's maintenance of the Voigt Center constituted a nuisance that diminished their property value and "resulted in [the Voorhies parties] being constantly disturbed in their home." They sought monetary damages, a declaration that the Town had violated its noise ordinances and the "recreational purposes only" deed restriction, and temporary and permanent injunctive relief. The Voorhies parties argued the trial court had subject-matter jurisdiction over their claims because the Town's operation of the Voigt Center was a proprietary function.

The Town filed a plea to the jurisdiction, arguing the Voorhies parties did not allege a valid waiver of governmental immunity. Specifically, the Town argued: (1) its operation of the Voigt Center fell within the statutorily defined governmental functions of operating a park, civic or community center, or recreational facility; and (2) its challenged actions did not constitute a cognizable taking of the Voorhies parties' property. The Town also argued the Voorhies parties did not establish they were "persons interested" under the deed who were entitled to seek a declaration of that instrument. Finally, the Town argued the Voorhies parties lacked standing because they did not present evidence that they owned property near the Voigt Center.

During the hearing on the Town's plea to the jurisdiction, the Town acknowledged that the Voorhies parties owned residential property near the Voigt Center, and it abandoned the standing

argument it had asserted based on that ownership issue. The Town did not abandon any of its other arguments. The trial court subsequently signed an order granting the Town's plea and dismissing the Voorhies parties' claims with prejudice. The Voorhies parties timely filed this appeal.

## ANALYSIS

### *Standard of Review*

We review a trial court's order on a plea to the jurisdiction de novo. *San Antonio Water Sys. v. Smith*, 451 S.W.3d 442, 445 (Tex. App.—San Antonio 2014, no pet.). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We liberally construe the pleadings in favor of the pleader. *Id.* If the pleaded facts do not affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively negate jurisdiction, we remand to allow the plaintiffs an opportunity to amend. *Id.* at 226–27. However, "[i]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

Where the jurisdictional issue implicates the merits of the parties' claims, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632–33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id.* at 633. If the evidence is undisputed or does not raise a fact question, the trial court rules on the plea as a matter of law. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). However, if the evidence raises a fact question on the jurisdictional issue, "then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28. In reviewing a plea to the jurisdiction, "[o]ur ultimate inquiry is

whether the particular facts presented affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *City of San Antonio by & Through City Pub. Serv. Bd. of San Antonio v. Smith*, 562 S.W.3d 75, 79 (Tex. App.—San Antonio 2018, pet. denied).

### Governmental vs. Proprietary

In their first issue, the Voorhies parties argue the trial court erred by granting the Town's plea to the jurisdiction because the Town's operation of the Voigt Center was a proprietary function.

### Applicable Law

A municipality is a governmental entity that "is generally immune from suit and liability for torts arising from the exercise of its governmental functions, except for the limited waiver provided by the Texas Tort Claims Act." *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 388–89 (Tex. App.—Fort Worth 2008, no pet.). However, "[a] municipality is liable for torts arising from the exercise of its proprietary functions[.]" *Id.* at 389.

Acting under authority granted by the Texas Constitution, "the Legislature has defined and enumerated governmental and proprietary functions for the purposes of determining whether immunity applies to tort claims against a municipality." *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 147 (Tex. 2018) (*Wasson II*); *see also* TEX. CONST. art. XI, § 13(a) ("[T]he legislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary[.]"). A municipality's operation of parks, civic centers, community centers, and recreational facilities falls within the legislature's list of governmental functions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(13), (16), (17), (23). Section 101.0215(a) does not define "park," "civic center," "community center," or "recreational facility." *See id.* We may therefore consider dictionary definitions to discern their common meaning. *Sunstate Equip. Co., LLC v. Hegar*, 601 S.W.3d 685, 697–98 (Tex. 2020).

"The proprietary functions of a municipality do not include those governmental activities listed under" section 101.0215(a). TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(c). "If a function is included in the nonexclusive list of governmental functions, it has been deemed governmental in nature by the legislature and we have no discretion or authority to hold otherwise." *Rogers v. City of Houston*, 627 S.W.3d 777, 795 (Tex. App.—Houston [14th Dist.] 2021, no pet.).[1]

*Application*

In its plea to the jurisdiction, the Town argued it operates the Voigt Center as a park, civic or community center, or recreational facility. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(13), (16), (17), (23). When a governmental entity asserts a jurisdictional fact that implicates the merits of the action, it must support that assertion with evidence that "meet[s] the summary-judgment standard of proof." *See City of Lake Jackson v. Adaway*, No. 01-22-00033-CV, 2023 WL 3588383, at *4 (Tex. App.—Houston [1st Dist.] May 23, 2023, no pet.) (mem. op.) (citing *Miranda*, 133 S.W.3d at 228). Proper summary judgment proof may include "the pleadings, admissions . . . [and] stipulations of the parties" if those matters show "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law[.]" TEX. R. CIV. P. 166a(c); *see also Miranda*, 133 S.W.3d at 228.

In their live petition, the Voorhies parties alleged the Town built the Voigt Center with funds "bonded . . . from San Antonio to upgrade park facilities[.]" They further alleged that the

---

[1] The Texas Supreme Court has promulgated a four-part test to determine "whether a city's *contractual* conduct is governmental or proprietary." *Wasson II*, 559 S.W.3d at 147–48, 150–53 (emphasis added). The Voorhies parties rely heavily on the *Wasson II* factors to argue that the Town's use of the Voigt Center was proprietary. However, we recently refused to apply the *Wasson II* factors where a statute expressly designated the relevant municipal conduct as a governmental function. *See Elizabeth Benavides Elite Aviation, Inc. v. City of Laredo*, No. 04-19-00717-CV, 2020 WL 2044678, at *3 (Tex. App.—San Antonio Apr. 29, 2020, no pet.) (mem. op.). Additionally, because the Voorhies parties' claims sound in tort and not in contract, "we need not take a detour into the *Wasson* factors to resolve the [governmental versus proprietary] issue" in this case. *See Town of Highland Park v. McCullers*, 646 S.W.3d 578, 600 (Tex. App.—Dallas 2021, no pet.) (Goldstein, J., concurring); *see also id.* at 591–93 (majority opinion, concluding municipality's actions were governmental without addressing *Wasson II* factors). We nevertheless remain mindful of the supreme court's admonition that an otherwise proprietary action that merely "touches upon a governmental function" will not "render the proprietary action governmental." *Wasson II*, 559 S.W.3d at 153.

Voigt Center is located on municipally owned park land dedicated to public use; that the facility is used "for parties, music and weddings, etc."; and that the Town's grounds crews maintained the facility. These factual allegations support a conclusion that the Voigt Center is "a place where people from a particular community can meet for social, educational, or recreational activities" or "a municipal building or building complex, often publicly financed, with space for conventions, sports events, and theatrical entertainment." *See Community Center*, New Oxford American Dictionary (3rd ed. 2010); *Civic Center*, New Oxford American Dictionary (3rd ed. 2010). Additionally, during the hearing on the Town's plea to the jurisdiction, the Voorhies parties described the Voigt Center as "a park and recreation center" and "the Voigt Community Center." Finally, the Voorhies parties' brief explicitly states that the Town has designated the Voigt Center for "recreational use . . . during the daytime hours." We conclude these pleadings and admissions established as a matter of law that the Voigt Center is a civic or community center.[2] *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(16), (17); *see also* TEX. R. CIV. P. 166a(c); *Miranda*, 133 S.W.3d at 228.

The Voorhies parties do not dispute that a municipality's operation of a civic or community center is a governmental function. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a), (c); *Rogers*, 627 S.W.3d at 795. Nevertheless, they describe the Town's use of the Voigt Center more narrowly as "leasing property," and they correctly note that the Texas Tort Claims Act does not include "leasing property" in its list of governmental functions. *See generally* TEX. CIV. PRAC. & REM. CODE § 101.0215(a); *see also City of Tyler v. Owens*, No. 12-16-00128-CV, 2019 WL 3024756, at *6 (Tex. App.—Tyler July 10, 2019, pet. denied) (mem. op.). Relying on *Wasson II* and *City of*

---

[2] On appeal, the Voorhies parties argue the Town's operation of the Voigt Center "after hours" means the center has "cease[d] to be a community recreation center[.]" They cite no authority to support this proposition, and we have found none.

*Tyler*, they contend that leasing property is a discretionary, proprietary function. *See Wasson II*, 559 S.W.3d at 145–46; *City of Tyler*, 2019 WL 3024756, at \*5; *see also* TEX. LOC. GOV'T CODE ANN. § 51.015(a) (cities have discretion to lease their land).

But the Voorhies parties' claims did not arise directly out of the leases themselves. They explained below that "everything was fine" when the Town permitted use of the Voigt Center only during "regular hours like you would think of as a regular park or a community center," and they stated their complaints arose only when "the [Town] decided to start leasing out the center to private individuals for parties at night[.]" They argued that leasing the center "to private parties late at night to derive a profit" is a proprietary action. Stated differently, the Voorhies parties did not complain solely about the fact that the Town leased the Voigt Center; instead, they complained more generally about how the Town chose to operate the center.

In *City of San Antonio v. Butler*, we considered a plaintiff's claim that he suffered injuries that were caused, in part, by the City of San Antonio's decision to sell alcohol at the Alamodome. 131 S.W.3d 170, 173–74 (Tex. App.—San Antonio 2004, pet. denied). Like the Voorhies parties, the plaintiff in *Butler* argued the challenged activity was proprietary rather than governmental because it "produce[d] profits for the City." *Id.* at 178. We rejected that argument and concluded the city's actions were governmental because they fell "within the City's governmental function of owning, operating, or maintaining a civic or convention center." *Id.* We further noted:

> The City has discretion to perform or not perform many activities in connection with its government functions. Neither that discretion nor the existence of a profit motive reclassifies one aspect of a government function into proprietary conduct. The ability to contract for use of the Alamodome is logically characterized as part of the operation of the facility and must be considered a government function.

*Id.*

Our analysis in *Butler* compels a similar result here. The Town's decisions about how, when, and by whom the Voigt Center may be used are discretionary, in the sense that the legislature

has not established mandatory requirements for the day-to-day operation of a municipally owned civic or community center. But as we recognized in *Butler*, a municipality's decisions about how to use a civic or community center are part and parcel of operating such a facility. *See id.* Those decisions are therefore essential to the exercise of an enumerated governmental function. *See id.*; *see also Wasson II*, 559 S.W.3d at 153; Tex. Civ. Prac. & Rem. Code §§ 101.0215(a)(16), (17), (c). Where, as here, a municipality's decision to lease its property arose directly out of the exercise of an enumerated governmental function, this court has held that the leasing activity was governmental, not proprietary. *See Elizabeth Benavides Elite Aviation*, 2020 WL 2044678, at *2–3.

We note, moreover, that there is no evidence the Town leased the Voigt Center for long-term private use, that its leases otherwise precluded the community from using the facility, or that it relinquished operation or control of the Voigt Center to any of its lessees. These facts are thus distinguishable from cases whose holdings appear to conflict with our conclusions in *Butler* and *Elizabeth Benavides Elite Aviation*. *See Wasson II*, 559 S.W.3d at 145–46 (city engaged in proprietary function by leasing land for construction of private residences); *City of Tyler*, 2019 WL 3024756, at *5 (governmental function of operating swimming pools, beaches, and marinas "does not include the lease of lakefront property to private parties, who then construct private homes, piers, and boathouses"); *City of Carrollton v. Weir Bros. Contracting LLC*, No. 05-20-00714-CV, 2021 WL 1084554, at *3–4 (Tex. App.—Dallas Mar. 22, 2021, pet. denied) (mem. op.) (lease of city-owned property to private entity for operation of for-profit sports complex was proprietary because "[t]he right to operate, manage, and control the sports complex belong[ed] entirely to" private entity; city retained "no ownership, management, or control of the governmental function at issue").

For these reasons, the Town's use of the Voigt Center was a governmental function. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.0215(a)(16), (17), (c); *Butler*, 131 S.W.3d at 178; *Elizabeth Benavides Elite Aviation*, 2020 WL 2044678, at \*3. We overrule the Voorhies parties' first issue.

### *The Voorhies Parties' Substantive Claims*

Having concluded the Town's challenged actions were governmental and not proprietary, we next consider whether the Voorhies parties' petition alleged a waiver of the Town's governmental immunity for any of their substantive claims. *See Hunnicutt v. City of Webster*, 641 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

#### *Nuisance and "Injury to Land—Diminished Value"*

In their second and fifth issues, the Voorhies parties argue the Town is not immune from their nuisance and "injury to land—diminished value" claims because it acted in a proprietary capacity. We have already concluded the Town did not act in a proprietary capacity, and the Voorhies parties' petition did not explicitly identify any further waivers of immunity for these claims. Because we must construe the petition liberally in the Voorhies parties' favor, we will nevertheless consider whether it alleged an alternative waiver of immunity. *See Miranda*, 133 S.W.3d at 226.

"[N]uisance liability arises only when governmental immunity is clearly and unambiguously waived." *City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004). The Voorhies parties did not plead any facts that would bring their nuisance claims under the umbrella of the Texas Tort Claims Act or another statutory waiver of immunity. *Id.* at 315–16; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). Accordingly, the Town "can only be liable for a nuisance that rises to the level of a constitutional taking under Article I, Section 17 of the Texas Constitution." *Jennings*, 142 S.W.3d at 312.

Article I, section 17 provides that private property may not be "taken, damaged, or destroyed for or applied to public use without adequate compensation[.]" TEX. CONST. art. I, § 17(a). When an owner claims his property has been taken "outside of proper condemnation proceedings," an action based on Article I, section 17 is referred to as an inverse condemnation claim. *See, e.g.*, *Alewine v. City of Houston*, 309 S.W.3d 771, 774 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To recover on an inverse condemnation claim, the plaintiff "must plead and prove (1) an intentional governmental act; (2) resulted in a 'taking' of his property; (3) for public use." *Id.* at 774–75.

But the constitution does not "require compensation for every decrease in market value attributed to a governmental activity." *Felts v. Harris County*, 915 S.W.2d 482, 484 (Tex. 1996). Article I, section 17 permits recovery only for injuries that are not "suffered by the community in general." *Id.*; *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 647–48 (Tex. 2004); *Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 84 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Wilkinson v. Dall.-Fort Worth Int'l Airport Bd.*, 54 S.W.3d 1, 13 (Tex. App.—Dallas 2001, pet. denied). Both the Texas Supreme Court and our sister courts of appeals have recognized that claims arising from noise generally do not state a compensable taking. *See, e.g.*, *Felts*, 915 S.W.2d at 485–86; *City of Friendswood v. Horn*, 489 S.W.3d 515, 526–27 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Aaron v. Port of Hous. Auth. of Harris Cnty.*, No. 01-12-00640-CV, 2013 WL 4779716, at *5–6 (Tex. App.—Houston [1st Dist.] Sept. 5, 2013, no pet.) (mem. op.); *Wilkinson*, 54 S.W.3d at 15–16. This is because noise generally does not affect a single property in any unique way, but instead "has a similar impact on the community as a whole." *Felts*, 915 S.W.2d at 485.

The Voorhies parties' diminished value claim alleged the first and third required elements of an inverse condemnation action. *See Alewine*, 309 S.W.3d at 774–75. We conclude, however,

that the petition's allegations affirmatively negated the second required element: a cognizable taking. *See id.*; *Miranda*, 133 S.W.3d at 226–27. The Voorhies parties alleged the Town's use and maintenance of the Voigt Center created noise that was inappropriate for an otherwise quiet residential neighborhood and diminished the value of their home. But they did not allege that the noise from the Voigt Center rendered their home unusable as a residence. *See Alewine*, 309 S.W.3d at 779–80 (complaints about noise from planes flying overhead did not state a viable inverse condemnation claim because plaintiffs did not allege their homes were "no longer usable for residential purposes"). They also did not allege that noise from the Voigt Center affected their property value "in some special or unique way different from the community as a whole[.]" *See Aaron*, 2013 WL 4779716, at *6; *see also State v. Schmidt*, 867 S.W.2d 769, 781 (Tex. 1993). Even if we assume the Voorhies parties' home is closer to the Voigt Center than other homes and is therefore more severely affected by the alleged noise,[3] "the difference is one of degree and not of kind." *Schmidt*, 867 S.W.2d at 781. "The fact that some damages may be greater if the property is in closer proximity to the [noise] does not suffice to render such damages constitutionally compensable under Article I, Section 17." *Felts*, 915 S.W.2d at 485; *see also Wilkinson*, 54 S.W.3d at 13 ("Proving merely that governmental action has caused a diminution in value or damaged the marketability of property is insufficient.").

For these reasons, the Voorhies parties' petition did not allege a cognizable taking under article I, section 17 of the Texas Constitution. *See Felts*, 915 S.W.2d at 485–86; *Wilkinson*, 54 S.W.3d at 20; *Alewine*, 309 S.W.3d at 779–80. This deficiency is fatal to both the nuisance claim and the diminished value claim. *See Jennings*, 142 S.W.3d at 312, 316; *Alewine*, 309 S.W.3d at

---

[3] The Voorhies parties' petition alleged that the Voigt Center "was built just sixty feet from [their] home" and that events occurring at the center are sometimes located between twenty and forty feet from their property. However, the record does not show whether any residential properties are as close or closer to the Voigt Center than the Voorhies parties' home.

779–80; *Sunset Valley*, 146 S.W.3d at 648; *Felts*, 915 S.W.2d at 485–86. The trial court therefore did not err by granting the Town's plea to the jurisdiction as to those claims. *See Miranda*, 133 S.W.3d at 226–27.

We overrule the Voorhies parties' second and fifth issues.

*Declaratory Relief*

In their fourth issue, the Voorhies parties argue the Town is not immune from their claims under the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). The Voorhies parties relied on the UDJA to seek declarations that the Town's use of the Voigt Center violated its own noise ordinances and a deed restriction. We will consider each requested declaration separately.

A.      Noise ordinances

"[S]overeign immunity bars UDJA actions against the state and its political subdivisions absent a legislative waiver." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam). The UDJA does not operate as a general waiver of governmental immunity. *Bandera County v. Hollingsworth*, 419 S.W.3d 639, 647 (Tex. App.—San Antonio 2013, no pet.). While the UDJA waives governmental immunity for a challenge to the validity of a municipal ordinance, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009), the Voorhies parties did not request a declaration that any of the Town's ordinances were invalid.[4] Instead, they requested a declaration that the Town violated its noise ordinances.

The UDJA does not waive immunity for a claim that a governmental entity itself, "as opposed to [its] officers in their official capacity," violated a law. *Heinrich*, 284 S.W.3d at 372–

---

[4] Because the Voorhies parties did not challenge the validity of a municipal ordinance, we need not consider either the Town's assertion that the Voorhies parties' claims are barred by the Texas Validation Statute or the Voorhies parties' third issue on appeal, which contests that assertion. *See* TEX. LOC. GOV'T CODE ANN. § 51.003(a); TEX. R. APP. P. 47.1.

73; *Sefzik*, 355 S.W.3d at 621–22. Nor does the UDJA waive immunity where "the plaintiff seeks a declaration of his or her rights under a statute or other law." *Sefzik*, 355 S.W.3d at 621. Because "the UDJA does not waive [governmental] immunity for 'bare statutory construction' claims," the trial court lacked subject-matter jurisdiction over the Voorhies parties' claim that the Town violated the noise ordinances. *McLane Co., Inc. v. Tex. Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 876 (Tex. App.—Austin 2017, pet. denied). The trial court did not err by granting the Town's plea to the jurisdiction as to that issue. *See, e.g.*, *City of Georgetown v. Putnam*, 646 S.W.3d 61, 81 (Tex. App.—El Paso 2022, pet. denied).

### B.     Deed restriction

The Voorhies parties also sought a declaration that the Town's operation of the Voigt Center violated a usage restriction in the 1969 deed conveying the land to the Town. While the Town argued this claim was barred by governmental immunity, it also argued below and on appeal that the Voorhies parties did not show they were "persons interested" under the deed or that their rights were affected by it. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a). This is an argument that the Voorhies parties lacked standing to seek declaratory relief regarding the deed. *See Webb v. Voga*, 316 S.W.3d 809, 812–13 (Tex. App.—Dallas 2010, no pet.).

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Like other questions of subject-matter jurisdiction, standing cannot be waived and may be raised for the first time on appeal or addressed sua sponte by a court. *See, e.g.*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993); *Lockhill Ventures, LLC v. Ard Mor, Inc.*, No. 04-14-00796-CV, 2015 WL 4113691, at *2 n.4 (Tex. App.—San Antonio July 8, 2015, pet. denied) (mem. op.) (rejecting argument that actions taken during trial proceedings barred this court from reviewing standing). A pleader bears the burden to affirmatively allege facts

showing he has standing to assert his claims. *See, e.g.*, *Suarez v. Silvas*, No. 04-21-00113-CV, 2022 WL 379965, at \*4 (Tex. App.—San Antonio Feb. 9, 2022, no pet.) (mem. op.). "The consequence of [a plaintiff's] failure to demonstrate its standing is that the district court lacked subject-matter jurisdiction to adjudicate its claims." *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 837 (Tex. App.—Austin 2010, no pet.).

Because a deed restriction "is a contractual agreement between the seller and the purchaser of real property," such restrictions typically are "enforceable only by the contracting parties and those in direct privity of estate with the contracting parties." *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.); *see also Webb*, 316 S.W.3d at 813 (plaintiff seeking to enforce deed restriction must show "the covenant was imposed on defendant's land for the benefit of land owned by [plaintiff]") (internal quotation marks omitted). The Voorhies parties attached the 1969 deed containing the recreational use restriction to their live petition. That instrument showed on its face that the Voorhies parties were not a party to it, and they did not allege or present evidence that they were in direct privity with the contracting parties. *See Ski Masters*, 269 S.W.3d at 668. Furthermore, they did not allege or establish that the recreational use restriction was part of a general plan or scheme of development that benefitted or burdened their land. *See Lockhill Ventures*, 2015 WL 4113691, at \*6. Finally, they did not allege or establish that they relied on that restriction when they purchased their property. *See Bitgood v. Harkness*, No. 09-20-00263-CV, 2021 WL 2371252, at \*9 (Tex. App.—Beaumont June 10, 2021, pet. denied) (mem. op.).

After reviewing the record and the applicable law, we conclude the Voorhies parties did not have standing to seek declaratory relief regarding the deed restriction. *See Lockhill Ventures*, 2015 WL 4113691, at \*6; *Webb*, 316 S.W.3d at 815. The trial court therefore lacked subject-matter jurisdiction over that claim. *See Webb*, 316 S.W.3d at 815. Because the Voorhies parties lacked

standing to seek a declaration regarding the deed, we need not consider whether the Town was immune from that claim. TEX. R. APP. P. 47.1.

We overrule the Voorhies parties' fourth issue.

*Equitable and Injunctive Relief*

In their sixth issue, the Voorhies parties argue they were entitled to injunctive or equitable relief. An award of injunctive or equitable relief must be supported by at least one viable cause of action. *Cf. DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 WL 7440314, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no pet.) (mem. op.); *Vista Bank v. Nelezer, Inc.*, No. 05-21-00348-CV, 2021 WL 5027764, at *3 (Tex. App.—Dallas Oct. 29, 2021, no pet.) (mem. op.). Because we have concluded the trial court lacked subject-matter jurisdiction over the Voorhies parties' nuisance, inverse condemnation, and declaratory judgment claims, we overrule the Voorhies parties' sixth issue.

## CONCLUSION

We affirm the trial court's order granting the Town's plea to the jurisdiction.

Beth Watkins, Justice