

# NUMBER 13-16-00253-CV

## COURT OF APPEALS
## THIRTEENTH DISTRICT OF TEXAS
## CORPUS CHRISTI – EDINBURG

EDINBURG CONSOLIDATED INDEPENDENT         **Appellants,**
SCHOOL DISTRICT, SILVIA LEDESMA, AND
CARLOS GUZMAN,

**v.**

SOBEYDA I. SMITH, DANIEL REBOLLAR,
AND MARIELY REBOLLAR,         **Appellees.**

## On appeal from the 398th District Court
## of Hidalgo County, Texas.

## NUMBER 13-16-00254-CV

## COURT OF APPEALS
## THIRTEENTH DISTRICT OF TEXAS
## CORPUS CHRISTI – EDINBURG

## IN RE SOBEYDA I. SMITH, DANIEL REBOLLAR, AND MARIELY REBOLLAR

## On Petition for Writ of Injunction.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Garza
## Memorandum Opinion by Justice Garza

In our cause number 13-16-00253-CV, appellants Edinburg Consolidated Independent School District ("ECISD"), Sylvia Ledesma, and Carlos Guzman appeal (1) an order granting a temporary injunction rendered in favor of plaintiffs below and appellees herein Sobeyda I. Smith, Daniel Rebollar, and Mariely Rebollar, and (2) an order denying their plea to the jurisdiction. Intervenor below, Lydia Elizondo Mount, individually and as next friend of Michael Edward Reed, has also appealed the order granting the temporary injunction. In our cause number 13-16-00254-CV, the appellees filed a petition for writ of injunction and an emergency motion for temporary relief pending determination of the merits of the petition. The central issue presented in these proceedings is whether appellants possess governmental or official immunity for their determination that a computer science class does not count as a weighted class for purposes of class ranking at Robert Vela High School in Edinburg, Texas. ECISD (Local) Policy provides that the "District shall include in the calculation of class rank semester grades earned in high school credit courses . . . in the following subject areas only: English, languages other than English, mathematics, science, and social studies."

We have received the clerk's and reporter's records in the appeal and have requested and received responses to the petition for writ of injunction from appellants and intervenor. Given the urgent and extraordinary nature of the issues presented herein, the appeal will be submitted to the Court without briefs. *See* TEX. R. APP. P. 28.3; *In re Tex.*

2

*Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 207 (Tex. 2002); *In re J.S.*, 136 S.W.3d 716, 717 (Tex. App.—El Paso 2004, no pet.). However, in our consideration of the appeal, we are guided by the motions filed in the appeal and all pleadings filed in the original proceeding.[1]

We conclude that ECISD, Ledesma, and Guzman are immune from suit. Accordingly, we reverse the trial court's order granting the temporary injunction and dissolve the temporary injunction, and we reverse the trial court's denial of the pleas to the jurisdiction and render judgment dismissing the appellees' claims against ECISD, Ledesma, and Guzman for lack of jurisdiction. We dismiss the petition for writ of injunction as moot.[2]

## I. BACKGROUND

Under ECISD (Local) Policy, "eligible courses" are categorized and weighted for purposes of calculating numerical grade point averages depending on whether the course is designated as an "AP" course, a "dual enrollment" course, a "Pre-AP" course, an

---

[1] Plaintiffs have filed a motion to consolidate the original proceeding in cause number 13-16-00254-CV with the accelerated appeal pending in cause number 13-16-00253-CV, and to apply the previously-issued injunction in the original proceeding to the accelerated appeal. The motion is opposed by appellants and intervenor. Given the intertwined substantive issues raised in the appeal and the original proceeding, the complexity of the issues presented, and the urgency of the matters herein, we consider it advisable to consolidate these matters for purposes of judicial efficiency. Accordingly, we GRANT the motion to consolidate, in part, insofar as the appeal and original proceeding will be treated as a consolidated matter for all purposes in this Court. The motion is DENIED in all other respects.

[2] ECISD, Ledesma, and Guzman have filed an "Amended Motion to Modify or Clarify Emergency Order issued May 6, 2016," through which they and the plaintiffs propose that Mariely and Michael should participate in graduation as the two highest ranked students in their graduating class, without either student being designated as valedictorian, and prohibiting ECISD from designating either as valedictorian or issuing an Honor Graduate Certification to either student until after the final conclusion of the underlying litigation and any and all related appeals or original proceedings. The motion states that the appellants have been unable to confer with the intervenor and we should deem that she is opposed to the relief sought. Given our disposition of the appeal and the matters herein, we DISMISS this motion as moot.

"honors" course, or an "advanced" course." "AP" courses and "dual enrollment" courses are weighted the highest, receiving an additional "plus 10" points to the grade that the student earns on a 100 point scale.

During the 2015-2016 school year, student Mariely Rebollar was advised by her counselor, Reynaldo Garza, that one of the courses available at her school, 2904 Dual Enrollment Computer Science, would be weighted and included for grading purposes in class ranking as a "plus 10" class. The class was new and had first been available during the previous school year. It had been weighted for class ranking purposes that year, affecting a student who took the class and graduated ranked number nine during the 2014-2015 school year. Mariely's father, Daniel Rebollar, a teacher at Robert Vela, taught the class, which was primarily taken by freshmen and sophomores. Mariely, a senior, took the class and made a grade of 100. Thus, she anticipated that she would receive an additional ten points to that grade that would be included in the class rank calculations.

After Mariely completed the class, ECISD determined that the class did not constitute a core class, i.e., "a class in English, languages other than English, mathematics, science, and social studies," and the grade in that class could not be used for ranking purposes. On January 19, 2016, Ledesma, principal of the high school, issued a letter to the students who had enrolled in the class stating that the dual enrollment computer science course would not be counted in calculating the class rankings for the 2016 graduating class. This determination affected approximately seventy to eighty students who had taken the class.

4

On February 5, 2016, Mariely and her parents, Daniel Rebollar and Sobeyda I. Smith, filed a grievance asserting that ECISD employees told them, before Mariely registered for and attended the class, that this course would be included as a "weighted class" in calculating the class rank. They asserted that they relied on these statements in deciding to take the class and that the same class had counted as a weighted class during the previous school year. Their grievance asked ECISD to include the computer science class in calculating the 2016 class rank.

On March 4, 2016, Ledesma issued the Level I decision denying the appellees' grievance. The basis for the decision was the ECISD (Local) Policy stating that: "The district shall include in the calculation of class rank semester grades earned in high school credit courses taken in grades 9-12 in the following subject areas only: English, languages other than English, mathematics, science, and social studies."

The appellees filed a Level II appeal. On April 7, 2016, Carlos Guzman, the High School Area Director for ECISD, denied that appeal in a four-page detailed opinion. The opinion gave several rationales which can be summarized as follows:

First, Guzman reiterated that the computer science class did not qualify under ECISD (Local) Policy as a ten-point weighted dual credit class because it did not fall within one of the qualifying subject matters.

Second, the 2015-2016 ECISD course catalog did not include the 2904 computer science class but did include a different class, 2903 computer science, listed under the subject of mathematics. Guzman stated that the catalog did not address the specific course under consideration and that the catalog, created and drafted by administrative staff, was not a binding document, contained no representations that the content reflected

5

district policy, and was intended to be utilized only as a planning tool for the students' parents. Guzman asserted that ECISD was bound to follow the ECISD (Local) Policy "regardless of what the administration chooses to publish in the course catalog."

Third, the Texas Administrative Code provision stating that computer science may be used to satisfy a "language other than English" (LOTE) requirement for graduation is not dispositive that computer science is itself a language other than English class. *See* TEX. ADMIN. CODE ANN. § 74.12 (West, Westlaw through 2015 R.S.) (specifying the foundation high school program requirements). Under this section, a student may take two credits in computer programming language as an alternative method for satisfying LOTE requirements for graduation. Guzman stated that the "plain language" of the statute provided that computer science courses "may" satisfy the LOTE requirement for graduation, but that did not mean that computer science courses are to be classified as LOTE for the purposes of the ECISD (Local) ten-point weight calculations for grading purposes. According to Guzman, "[h]ad this been the case, the Code drafters could have very simply used language stating that Computer Science courses constitute LOTE courses, rather than the permissive 'may be selected' language that was actually used instead." Guzman stated that even if this section created an inference that computer science classes might be classified as LOTE for the purposes of the ECISD (Local) calculation, the inference was "simply too weak to pass muster in light of the classification evidence put on by the District."

Fourth, Guzman stated that the subject matter categorization of 2904 computer science is determined by the Texas Education Agency ("TEA"), and not by ECISD. According to Guzman:

6

Edinburg CISD does not have the ability to label courses as mathematics or LOTE for the purposes of [ECISD (Local)] 10-point weight calculation. The subject matter of a course is determined by the Texas Education Agency (TEA). The TEA provides an individual Course ID for all of the courses offered by Texas public schools. For example, the TEA code corresponding to 2904 Computer Science is no. 03580200. The ID codes of all courses correspond to a subject matter chart TEA provides in order to provide Texas public school districts with the information required for districts to provide highly qualified teachers for that subject matter. The TEA subject matter chart for 2904 Computer Science is labeled "Table 22," and is provided as Exhibit 2 to this document. Table 22 clearly defines course no. 03580200 as a Career and Technology course. As such, it does not qualify for [ECISD (Local)] 10-point calculations.

Even if done under the best intentions, to alter or adjust the computer science course to calculate as a mathematics course for the purpose of [ECISD (Local)] would be a knowing and fraudulent violation of the District's obligations of accurate reporting to the TEA. Edinburg CISD does not have the authority to override the course subject matter table that corresponds with the no. 03580200 course number provided by TEA. Similarly, because of the District's obligations to accurately report grades and graduations to TEA's PEIMS data center, Edinburg CISD does not have the authority to simply alter student [Mariely's] GPA or award [Mariely] the weighted 10 points. Therefore, as unfortunate as it is that student [Mariely] was mistakenly provided incorrect information regarding the GPA calculations of her 2904 Computer Science class, Edinburg CISD does not have the authority or the ability to grant the relief that [Mariely] seeks without violating the District's obligations to the TEA. As a result of these findings, this grievance must be denied.

The appellees filed a Level III appeal. On April 22, 2016, the ECISD Board of Trustees denied that appeal.

On April 18, 2016, the appellees filed suit against ECISD and Ledesma. That same day, the trial court granted an ex parte temporary restraining order in favor of the appellees which expired on May 2, 2016. On April 27, 2016, the intervenor filed an intervention and a plea to the jurisdiction. On May 2, 2016, the appellees filed a third amended petition, application for temporary restraining order, and request for temporary injunction against ECISD, Ledesma, and Guzman, pleading common law tort claims, an

ultra vires cause of action, and two constitutional claims. The appellees asserted that they were damaged "because of [ECISD, Ledesma, and Guzman's] refusal to include the Dual Enrollment Computer Science Class 2904 in the grade point average for purposes of ranking." According to the appellees, it is the "policy of public universities in Texas that the highest ranking student of each graduating class gets free tuition for the first year at a public university," and if the class is not included, "Mariely has no chance of becoming the highest ranked and will lose the first year's tuition." They requested declaratory and injunctive relief.[3]

ECISD and Ledesma filed an original answer, plea to the jurisdiction, and special exceptions to the appellees' original petition.[4] They asserted that they were protected by official as well as sovereign and governmental immunity—Ledesma in her official capacity and ECISD as a political subdivision of the State:

> In the four causes of action upon which this suit is based, Plaintiffs have pled various tort causes of action against Defendants. Edinburg

---

[3] We note that the appellees' allegations regarding class ranking are speculative insofar as they allege that they "believe that if the Computer Science Class is included in the rankings, Mariely will be ranked as the number one student in the class," and "[w]ithout the class, she does not have the chance to be Valedictorian." Appellees assert that it is "possible and/or likely that she will become the highest ranking student" if the dual enrollment class were included for ranking purposes, but if not, she has "no chance" or "opportunity" to become the highest ranked student." An injunction is not proper when the claimed injury is merely speculative; fear or apprehension of injury is not sufficient to support a temporary injunction. *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983); *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 742 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 750 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

[4] The clerk's record does not indicate that the ECISD defendants filed an amended answer or plea to the jurisdiction after Guzman was made a party to the suit in the plaintiffs' third amended petition. However, although Guzman did not file a plea to the jurisdiction, a court may consider jurisdiction on its own initiative. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000); *Tex. Worker's Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517 n.15 (Tex. 1995); *see also Fischer v. Klein*, No. 03-10-00310-CV, 2014 WL 5420405, at *2 (Tex. App.—Austin Oct. 23, 2014, no pet.) (mem. op.). Further, subject matter jurisdiction may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). Accordingly, we consider the trial court's jurisdiction over Guzman in terms of immunity in this appeal. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445; *Tex. Workers' Comp. Com'n v. Horton*, 187 S.W.3d 282, 285 (Tex. App.—Beaumont 2006, no pet.).

Consolidated Independent School District and Sylvia Ledesma affirmatively plead that pursuant to Texas Education Code § 22.051, a professional employee of a school district is not personally liable for any act that is incident to or within the scope of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee. All of the actions and/or failures to act alleged by Plaintiffs as the basis of their suit fall squarely within this statutory grant of immunity. Government officials and employees are entitled to official immunity from liability for the performance of their (1) discretionary duties, in (2) good faith as long as they are (3) acting within the scope of authority. *See Kassen v. Harla*, 887 S.W.2d 4, 9 (Tex. 1994); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

ECISD and Ledesma further specially excepted as to claims against them in their official capacities because "a party suing a governmental agency and/or governmental actors, protected by sovereign immunity, must allege consent to suit either by reference to a statute or express legislative permission," and absent such consent and a pleading of consent, the court lacks jurisdiction to hear the case. *See, e.g., Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Univ. of Tex. Med. Branch at Galveston v. Mullins*, 57 S.W.3d 653, 656 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

On May 2, 2016, intervenor Mount filed an amended intervention and plea to the jurisdiction with a request to dissolve the temporary restraining order. She asserted that she and her son had a justiciable interest in the case because the addition of ten points to the grade that Mariely earned for the computer science dual enrollment 2904 class could affect her son Michael's rank in the 2016 graduating class such that he would not serve as valedictorian. She asserted that the appellees' claims were barred by

9

governmental immunity. She further asserted that Sobeyda and Daniel lacked standing because Mariely was no longer a minor child.[5]

The trial court held hearings on April 25, April 27, and May 3, 2016 on the pleas to the jurisdiction and the merits of the request for a temporary injunction. The court heard testimony from Mariely and her parents, Mount, Ledesma, Garza, Guzman, and the superintendent of ECISD, Dr. Rene Gutierrez. Most of the testimony centered on and reiterated the rationales previously mentioned during the grievance process for ECISD's actions in refusing to count the class for grading purposes and class ranking.

Mariely testified that she confirmed with her counselor prior to taking the computer science class that it would count towards her grade point average. Garza, her counselor, testified that Mariely was already enrolled in the class when he told her that the computer science class would count for class rankings. Garza testified that he checked with the early college counselor, the head counselor, and the registrar regarding whether the class counted for ranking purposes. The appellees generally pointed out that the course catalog included a similar computer science class under the topic of "mathematics," and Mariely's transcript similarly listed the 2904 dual enrollment class under that topic.

In contrast, ECISD's witnesses repeatedly admitted that they had made a mistake in treating computer science as a weighted course for purposes of class rank, but they had to correct the error and follow their policies and TEA rules and statutes. Specifically, Gutierrez, Guzman, and Ledesma testified that they are required to follow ECISD (Local)

---

[5] The parties included allegations regarding the exhaustion of administrative remedies in their pleadings; however, the parties conceded that the plaintiffs had exhausted their remedies at the hearings in this matter. Given our disposition of this appeal and original proceeding, we need not address the intervenor's allegations regarding standing as it pertains to Mariely's parents.

Policy, and that policy requires that weighted classes must be in the core subject areas. The Public Education Information Management System, which is a state-wide reporting program, has identified the computer science course as one that is not weighted, and that standard, which is universal across the state, is unequivocal and is the "final authority" for how a course is classified. Further, Mariely's graduation plan defines computer science classes as an elective credit under career and technology education rather than a "core" class, as identified in the policies as English, languages other than English, mathematics, science, and social studies. Guzman testified that the ECISD (Local) Policy regarding the calculation of class ranking regarding core classes was consistent with the Texas Administrative Code. Gutierrez testified that the course catalog, which listed a similar computer science class under the topic of "mathematics," was not a binding legal document but was merely an "information item for the parents."

On May 5, 2016, the trial court denied the appellants' and intervenor's pleas to the jurisdiction and issued a temporary injunction at 10:05 a.m. which prohibited appellants from excluding the disputed course and not giving it a ten-point weight in calculating class rank, and prohibited it from issuing class rankings without the inclusion of the disputed course until trial on the merits, which is not set until October 17, 2016. The temporary injunction provided that it would become effective on posting a $500 bond.

Also on May 5, 2016, at approximately noon, the appellants perfected their appeal and announced that they would proceed with class rankings because they were entitled to an automatic stay of the temporary injunction under Texas Rule of Appellate Procedure 29. *See* TEX. R. APP. P. 29.1(b) ("Perfecting an appeal from an order granting interlocutory relief does not suspend the order appealed from unless . . . the appellant is

11

entitled to supersede the order without security by filing a notice of appeal."); TEX. CIV. PRAC. & REM. CODE ANN. § 6.004 (West, Westlaw through 2015 R.S.) ("A school district may institute and prosecute suits without giving security for cost and may appeal from judgment without giving supersedeas or cost bond.").

In the early morning hours of May 6, 2016, the appellees filed their petition for writ of injunction with this Court. However, on the morning of May 6, 2016, the appellants proceeded with ranking the students. Michael's transcript was released, the registrar told him that he was the valedictorian, and Ledesma told him he was valedictorian and to start preparing his speech. The other top ten-ranked students were also informed of their class ranking. Shortly thereafter, the appellees posted the $500 bond required by the temporary injunction.

That afternoon, after these events, this Court issued its temporary order effectively reinstating the temporary injunction. We further ordered appellants, or any others whose interest would be directly affected by the relief sought, to file a response to the petition for writ of injunction. *See* TEX. R. APP. P. 52.4, 52.8. We have now received a response to the petition for writ of injunction from ECISD, Ledesma, and Guzman. They request that this Court dissolve its emergency order and then dismiss or deny the petition for writ of injunction, or alternatively, issue an order "prohibiting [them] from making any decision on the class ranking of the Relator or Intervenor student, for purposes of the students' participation in the graduation ceremony scheduled on June 4, 2016; and prohibit [them] from producing, and/or from delivering an 'Honor Graduation Certificate,' or equivalent document . . . until the final resolution of the underlying litigation."

The Court has also received a response from the intervenor. She contends that this Court lacks jurisdiction to issue injunctive relief; that injunctive relief is not warranted; and that the petition should be denied as moot because "[f]inal grades were calculated and the top ten students on May 6, 2016, were notified of their class ranks and the valedictorian (Michael) and salutatorian (Mariely) were named." The intervenor has now also filed a notice of appeal regarding the temporary injunction.

## II. PETITION FOR WRIT OF INJUNCTION

A court of appeals may grant injunctive relief for the purpose of protecting its jurisdiction over a pending appeal and to preserve the subject matter of the litigation so that the appeal does not become moot. *See Dallas Morning News v. Fifth Ct. of Apps.*, 842 S.W.2d 655, 658 (Tex. 1992) (orig. proceeding); *Becker v. Becker*, 639 S.W.2d 23, 24 (Tex. App.—Houston [1st Dist.] 1982, orig. proceeding) (stating that an appellate court has jurisdiction to grant injunctive relief to protect its jurisdiction over pending appeal, but not merely to preserve the status quo or prevent loss or damage to a party); *see also* TEX. GOV'T CODE ANN. § 22.221(a) (West, Westlaw through 2015 R.S.) ("Each court of appeals or a justice of a court of appeals may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court."). However, the threat of jurisdictional interference must be real; the writ will not be issued to prevent the mere possibility of interference. *In re Castle Tex. Prod. Ltd. P'ship*, 189 S.W.3d 400, 403 (Tex. App.—Tyler 2006, orig. proceeding).

## III. PLEA TO THE JURISDICTION

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction over a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Pineda v. City*

13

*of Houston*, 175 S.W.3d 276, 279 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Subject-matter jurisdiction is required for a court to have authority to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to the merits of the claim. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. Thus, when a court analyzes a plea to the jurisdiction, the court must not weigh the merits of the claim but should consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

It is the plaintiff's burden to allege facts that affirmatively establish the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. In determining whether the plaintiff has met this burden, we look to the allegations in the plaintiff's pleadings, accept them as true, and construe them in favor of the plaintiff. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). While we must construe the allegations in favor of the plaintiff, we are not bound by legal conclusions. *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 95 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Questions regarding whether the plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction and whether undisputed evidence of jurisdictional facts establishes a trial court's lack of jurisdiction are both questions of law which an appellate court reviews de novo. *Miranda*, 133 S.W.3d at 226. The trial court may consider evidence in ruling on a plea to the jurisdiction and must consider evidence when necessary to resolve the jurisdictional issues raised. *Vernco Constr., Inc., v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015).

## IV. GOVERNMENTAL IMMUNITY

The doctrine of governmental immunity bars suit against the state and its governmental units unless the state waives immunity. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013). It protects the state and its subdivisions from lawsuits that would "hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655–56 (Tex. 2008)). Governmental immunity protects school districts from suit and liability. *See Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011); *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (West, Westlaw through 2015 R.S.) (defining governmental unit as including "a political subdivision of this state" including a school district).

A governmental entity's employee, acting within the course and scope of his employment, has the same immunity as the governmental entity. *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 373 (Tex. 2012); *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 790 (Tex. App.—Dallas 2012, pet. denied); *see also Bates v. Dallas Indep. Sch. Dist.*, 952 S.W.2d 543, 551 (Tex. App.—Dallas 1997, writ denied) ("Trustees and agents of a school district, while acting in an official capacity, enjoy the same governmental immunity as does the school district.").

Whether a governmental entity is immune from tort liability for a particular claim depends entirely upon statute. *Dallas Cnty. Mental Health & Mental Retardation v.*

*Bossley*, 968 S.W.2d 339, 341 (Tex. 1998); *Ollie*, 383 S.W.3d at 790.  The Texas Tort Claims Act ("TTCA") provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.023 (West, Westlaw through 2015 R.S.).  To the extent that liability arises from the "use of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property," the TTCA effects a waiver of liability.  *Id.* § 101.021.

For a school district, however, the TTCA's waiver of immunity is more limited and includes "only tort claims involving the use or operation of motor vehicles."  *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 656; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.051 (West, Westlaw through 2015 R.S.) ("Except as to motor vehicles, this chapter does not apply to a school district or to a junior college district."); *see also Newman v. Bryan*, No. 06-13-00063-CV, 2013 WL 5576369, at *4 (Tex. App.—Texarkana Oct. 9, 2013, no pet.) (mem. op.).  Finally, the TTCA provides that the State does not waive immunity for claims arising out of intentional torts, including a tort involving disciplinary action by school authorities.  *See* TEX. CIV. PRAC. & REM CODE ANN. § 101.057(2) (West, Westlaw through 2015 R.S.); *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014).  A claim for misrepresentation is an intentional tort claim.  *See City of Friendswood v. Horn*, No. 01-15-00436-CV, __ S.W.3d __, __, 2016 WL 638471, at *9 (Tex. App.—Houston [1st Dist.] Feb. 11, 2016, no pet.); *Ethio Express Shuttle Serv. v. City of Houston*, 164 S.W.3d 751, 757–58 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 372 (Tex. App.—Fort Worth 2001, no pet.).

The Uniform Declaratory Judgment Act ("UDJA") is not a general waiver of sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). Stated otherwise, "state agencies . . . are immune from suits under the UDJA unless the Legislature has waived immunity for the particular claims at issue." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011). Section 37.006(b) of the UDJA provides a limited waiver of immunity for claims challenging the validity or constitutionality of ordinances or statutes. TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West, Westlaw through 2015 R.S.); *see Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. 2015); *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Heinrich*, 284 S.W.3d at 373 n.6. However, the UDJA waiver of sovereign immunity is limited or narrow. *Tex. Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 746 (Tex. App.—Austin 2014, pet. dism'd) (describing UDJA waiver of sovereign immunity as "limited"); *see also Harvel v. Tex. Dep't of Ins.-Div. of Workers' Comp.*, No. 13-14-00095-CV, __ S.W.3d __, __, 2015 WL 3637823, at *3 (Tex. App.—Corpus Christi June 11, 2015, pet. denied) (describing UDJA waiver of sovereign immunity as "narrow"). The UDJA does "not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Sefzik*, 355 S.W.3d at 621; *see Heinrich*, 284 S.W.3d at 372–73.

Governmental entities retain immunity from claims for injunctive relief based on allegations that government officials are violating the law or exceeding their powers under the law. *Heinrich*, 284 S.W.3d at 372–73. Such claims must be brought against the responsible government actors in their official capacities. *See id.*

**V. ANALYSIS**

17

We begin our analysis by reviewing the appellees' live pleading to determine if they met their burden to allege facts that affirmatively establish the trial court's subject matter jurisdiction. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. We accept the appellees' allegations as true and construe them in favor of the appellees, but we are not bound by any legal conclusions asserted in the pleadings. *See Miranda*, 133 S.W.3d at 226; *City of Pasadena*, 260 S.W.3d at 95.

In the third amended petition, application for temporary restraining order, and request for temporary injunction, which was the live pleading at the time the trial court issued the orders subject to appeal in this case, the appellees brought suit against ECISD, Ledesma, and Guzman. The appellees sued Ledesma and Guzman in both their individual and official capacities. The appellees asserted causes of action for fraudulent misrepresentation, negligent misrepresentation, general negligence, and intentional infliction of emotional distress. They asserted that the appellants violated their constitutional rights under article I, sections 13 and 19 of the Texas Constitution, and committed a violation of board policy "by not counting a class that is not specifically excluded under their local policy."

In terms of issues pertaining to jurisdiction, the appellees asserted that Ledesma and Guzman exceeded their authority and did not comply with ECISD's policies as it relates to class ranking, and that they lost their immunity when they acted outside the scope of their employment. The appellees specifically asserted the ultra vires exception to sovereign immunity:

> Sovereign immunity protects the State from lawsuits for money damages. *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009), citing *Tex. Nat. Res. Conservation Cmm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex.

18

2002). But an "action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009), citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

Under the "ultra-vires exception" to sovereign immunity, such immunity is not considered to be implicated by a suit against a state officer in his or her official capacity (thereby binding the State through its agent) for prospective injunctive or declaratory relief to compel compliance with statutory or constitutional provisions. *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 173 (Tex. App.—Austin 2013, no pet.) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–80 (Tex. 2009)).

This suit is brought specifically for the purpose of enjoining Sylvia Ledesma, Principal at Robert Vela High School from excluding the class for ranking purposes and/or enjoining Carlos Guzman from directing Sylvia Ledesma or any other person at Robert Vela High School from excluding the class for class rank purposes.

Sylvia Ledesma and Carlos Guzman have testified, under oath, that they are following Board Policy of ECISD in their decision to exclude the class at issue for purposes of class ranking. Plaintiffs, under cross examination and other evidence presented, have argued that the Defendants violated Board policy and acted without legal authority. The Supreme Court has stated when there is evidence that has been presented, there is a fact issue on the case and the plea to the Jurisdiction must be denied. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009).

As stated previously, the appellants and intervenor asserted generally and specifically that the appellees' claims were barred by governmental and official immunity.

## A. Individual Capacity Claims

We first address the appellees' claims against Ledesma and Guzman in their individual capacities. A plaintiff may sue a government employee in his or her official capacity, individual capacity, or both. *Heinrich*, 284 S.W.3d at 373 n.7. A suit against a government employee in his or her official capacity is a suit against the governmental employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). Conversely, a suit

19

against a government employee in his or her individual capacity seeks to impose personal liability on the individual. *Aguilar v. Frias*, 366 S.W.3d 271, 273 (Tex. App.—El Paso 2012, pet. denied).

The filing of a suit against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter. *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 401 (Tex. App.—Fort Worth 2008, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106 (West, Westlaw through 2015 R.S.); *City of Webster v. Myers*, 360 S.W.3d 51, 58 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also Kirk v. Plano Indep. Sch. Dist.*, No. 03-15-00211-CV, 2016 WL 462742, at *2 (Tex. App.—Austin Feb. 3, 2016, no pet.) (mem. op.) (rejecting the contention that school district employees were not entitled to official immunity where they allegedly acted outside the scope of their official duties because the plaintiff "has foreclosed the possibility of suing only the employees in their individual capacities by suing both them and the School District").[6]

---

[6] A governmental employee defendant is entitled to dismissal under the Texas Tort Claims Act ("TTCA") section 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the TTCA. *See Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011). Under *Franka*, claims which "could have been brought against the governmental unit" include all common law tort claims and not just those that fall within the statutory waiver of immunity found in the TTCA. *See id.* The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5) (West, Westlaw through 2015 R.S.). Additionally, "public officials act within the scope of their authority if they are discharging the duties generally assigned to them." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004). That is, an employee's scope of authority extends to job duties to which the official has been assigned, even if the official errs by completing the task. *Id.*

In the case at bar, the appellees do not allege any facts illustrating that their claims against Ledesma or Guzman are based on conduct outside of their general scope of employment with the school district, or that their determinations in this case are not based on the exercise of discretion in good faith. Nor do the plaintiffs seek to impose any element of personal liability on the individual defendants. *See Aguilar*, 366 S.W.3d at 273. In fact, the appellees made the same allegations against ECISD that they did against Ledesma and Guzman, and have sued ECISD for the same claims, suggesting that plaintiffs sued Ledesma and Guzman solely in their official capacities. *See Nueces Cnty. v. Ferguson*, 97 S.W.3d 205, 216 (Tex. App.—Corpus Christi 2002, no pet.) (relying in part on the similarity of claims alleged against a governmental unit and an employee to conclude that employee had been sued solely in his official capacity). Accordingly, the appellees' claims against Ledesma and Guzman in their individual capacities are barred.[7]

## B. Ultra Vires Claims

---

[7] ECISD and Ledesma further "affirmatively plead that pursuant to Texas Education Code § 22.051, a professional employee of a school district is not personally liable for any act that is incident to or within the scope of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee" and assert that "[a]ll of the actions and/or failures to act alleged by Plaintiffs as the basis of their suit fall squarely within this statutory grant of immunity." *See* TEX. EDUC. CODE ANN. § 22.051 (West, Westlaw through 2015 R.S.) (defining a professional employee of a school district as including, inter alia a superintendent, a principal, and any other person employed by a school district whose employment requires certification and the exercise of discretion); *id.* § 22.0511 (West, Westlaw through 2015 R.S.) ("A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students."); *see also Rivera v. Port Arthur Indep. Sch. Dist.*, No. 13-14-00214-CV, 2016 WL 1613285, at *7 (Tex. App.—Corpus Christi Apr. 21, 2016, no. pet. h.) (mem. op.) (construing these provisions as providing immunity from liability rather than immunity from suit). We note that government officials and employees are entitled to official immunity from liability for the performance of their (1) discretionary duties, in (2) good faith as long as they are (3) acting within the scope of authority. *See Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). In light of our conclusion, we need not determine whether Ledesma and Guzman are entitled to immunity under education code section 22.051.

The appellees contend that their claims against ECISD and Ledesma and Guzman are not barred by governmental or official immunity based on the ultra vires doctrine. While governmental immunity shields "the public from the costs and consequences of improvident actions of their governments," *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006), this pragmatic rationale supporting governmental immunity also helps to delineate its limits—"extending immunity to officials using state resources in violation of the law would not be an efficient way of ensuring those resources are spent as intended." *Heinrich*, 284 S.W.3d at 372. Thus, governmental immunity does not bar claims alleging that a government officer acted ultra vires, or without legal authority, in carrying out his or her duties. *Id.* at 371–72; *see Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011). Although frequently described as an "exception" to governmental immunity, this terminology may be deceptive because "when a governmental officer is sued for allegedly ultra vires acts, governmental immunity does not apply from the outset." *Houston Belt & Terminal Ry. Co. v. City of Houston*, No. 14-0459, __ S.W.3d __, __, 2016 WL 1312910, at *1 n.1 (Tex. Apr. 1, 2016). In short, to fall within the ultra vires doctrine, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372.

Even though the ultra vires doctrine may allow a party to bring a lawsuit against a governmental official, because the suit is still effectively against the governmental entity itself, the remedies available must be limited so as not to implicate the doctrine of governmental immunity. *See id.* at 373–75; *City of El Paso v. Waterblasting Techs., Inc.*, No. 08-15-00130-CV, __ S.W.3d __, __, 2016 WL 1465691, at *12 (Tex. App.—El Paso

22

Apr. 13, 2016, no. pet. h.). Thus, in an ultra vires action, a plaintiff may not seek money damages, and further, the plaintiff may seek only "prospective" rather than "retrospective remedies." *Heinrich*, 284 S.W.3d at 373–74 (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (noting that under analogous federal immunity law, claims for prospective injunctive relief are permissible, while claims for retroactive relief are not, because such an award is "in practical effect indistinguishable in many aspects from an award of damages against the State")).

Suits complaining of ultra vires actions may not be brought against a governmental unit, but must be brought against the allegedly responsible government actor in his or her official capacity. *Patel*, 469 S.W.3d at 76; *Heinrich*, 284 S.W.3d at 373; *see Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 257 (Tex. 2010) (per curiam). If an ultra vires claim is filed against both the government entity and the "appropriate officials in their official capacity," the court must dismiss the claims against the government entity for lack of jurisdiction but allow the claims against the official in his or her official capacity to go forward. *Heinrich*, 284 S.W.3d at 377; *see Patel*, 469 S.W.3d at 76. Here, because appellees sued ECISD on an ultra vires theory, the trial court lacked jurisdiction over the claims against ECISD, and we proceed to consider the claims against Ledesma and Guzman in their official capacities. *See Heinrich*, 284 S.W.3d at 377; *see Patel*, 469 S.W.3d at 76

Under the ultra vires doctrine:

Governmental immunity bars suits complaining of an exercise of absolute discretion but not suits complaining of either an officer's failure to perform a ministerial act or an officer's exercise of judgment or limited discretion without reference to or in conflict with the constraints of the law authorizing the official to act.

23

*Houston Belt & Terminal Ry. Co.,* 2016 WL 1312910, at \*5.  In this context, ministerial

acts are those "where the law prescribes and defines the duties to be performed with such

precision and certainty as to leave nothing to the exercise of discretion or judgment."  *City*

*of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994); *see Sw. Bell Tel., L.P. v.*

*Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).  On the other hand, discretionary acts require

the exercise of judgment and personal deliberation.  *See Sw. Bell Tel., L.P.*, 459 S.W.3d

at 587; *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004).

Last month, the Texas Supreme Court construed the breadth of the ultra vires

doctrine, clarified the ultra vires standard, and "reinforce[d] the narrow ultra vires

principles" that it has "repeatedly announced and endorsed."  *See Houston Belt &*

*Terminal Ry. Co.*, 2016 WL 1312910, at \*\*1–6.  The court held that a suit complaining of

a government officer's exercise of limited discretion alleging that the officer acted without

legal authority is a viable ultra vires claim.  *Id.* at \*1; *see Heinrich*, 284 S.W.3d at 372.

Thus, while governmental immunity provides broad protection to the government and its

agents,

> [I]t does not protect *every* act by a government officer that requires some
> exercise of judgment—a government officer with some discretion to
> interpret and apply a law may nonetheless act without legal authority, and
> thus ultra vires, if he exceeds the bounds of his granted authority or if his
> acts conflict with the law itself.

*Id.*  The court considered its previous holdings to address the meanings of "exercise of

discretion" and "without legal authority."  *Id.* at \*3; *see Sw. Bell Tel., L.P.*, 459 S.W.3d at

588–89 (concluding that the statutory authority granted to a government official created

a "purely ministerial duty," thus an allegation that the officer violated that duty was

24

sufficient to plead an ultra vires claim); *Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 9–11 (Tex. 2015) (concluding that a pension board did not act ultra vires when interpreting statutes given that there was "no manifest conflict" between the statutes and the board had broad discretionary authority, but noting that "in appropriate circumstances, a particular interpretation of the statute could be ultra vires"); *Sawyer Trust*, 354 S.W.3d at 393–94 (concluding that a claim was ultra vires where the governmental unit had the authority to make determinations as to navigability of streams but its determination was "not conclusive of the question" because "the question of navigability is, at bottom, a judicial one"); *Heinrich*, 284 S.W.3d at 369 (concluding that affidavits raised a fact question regarding whether the governmental officers were acting pursuant to, yet outside the limits of, a statutory grant of authority where the claimant "alleged that the officers, making the type of determination which they had authority to make, made that determination in a way the law did not allow").

After reviewing its jurisprudence, the Texas Supreme Court concluded as follows:

> These cases affirm that while the protections of governmental immunity remain robust, they are not absolute. As we said in *Heinrich*, governmental immunity protects exercises of discretion, but when an officer acts beyond his granted discretion—in other words, when he acts without legal authority—his acts are not protected. Thus, "discretion," as we have used the term in this context, cannot mean limited discretion that is otherwise constrained by the principles of law. *See, e.g.*, BLACK'S LAW DICTIONARY 565 (10th ed. 2014) (defining "judicial discretion" as "[t]he exercise of judgment . . . guided by the rules and principles of law"). Rather, our ultra vires caselaw uses the term in its broad sense. *See, e.g., id.* (defining "discretion" as "the power of free decision-making"). Accordingly, the principle arising out of *Heinrich* and its progeny is that governmental immunity bars suits complaining of an exercise of absolute discretion but not suits complaining of either an officer's failure to perform a ministerial act or an officer's exercise of judgment or limited discretion without reference to or in conflict with the constraints of the law authorizing the official to act. Only when such absolute discretion—free decision-making without any

25

constraints—is granted are ultra vires suits absolutely barred. And, as a general rule, "a public officer has no discretion or authority to misinterpret the law." *Cf. In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding).

To be sure, absolute protection would go against the rationale for governmental immunity in the first place. Governmental immunity is premised in part on preventing suits that attempt to control state action by imposing liability upon the state. *See IT–Davy*, 74 S.W.3d at 855–56. But "ultra vires suits do not attempt to exert control over the state—they attempt to reassert the control of the state." *Heinrich*, 284 S.W.3d at 372. Thus, prohibiting ultra vires suits when an officer acts outside the bounds of his granted authority would run counter to the purposes behind immunity. Allowing such suits, on the other hand, encourages enforcement of existing policy. *See id.* And, while governmental immunity serves the pragmatic purpose of protecting public resources, we have recognized that extending immunity to officers who violate the law does not further that goal. *See id.* Accordingly, governmental immunity only extends to those government officers who are acting consistently with the law, which includes those who act within their granted discretion. *See id.*

Because the ultra vires standard we clarify today hems closely to the purposes underlying governmental immunity and the ultra vires exception generally, it does not create a new vehicle for suits against the state to masquerade as ultra vires claims—indeed, our opinion merely reinforces the narrow ultra vires principles we have repeatedly announced and endorsed. *See Heinrich*, 284 S.W.3d at 372; *Fed. Sign*, 951 S.W.2d at 404; *Dodgen*, 308 S.W.2d at 842. Although only exercises of absolute discretion are absolutely protected, whether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue in any particular case. And so many legislative grants of authority, although not absolute, will be broad enough to bar most, if not all, allegedly ultra vires claims. *See, e.g., Klumb*, 458 S.W.3d at 11.

*Houston Belt & Terminal Ry. Co.*, 2016 WL 1312910, at **5–6. Thus, only exercises of absolute discretion—"discretion where no specific, substantive or objective standards govern the exercise of judgment"—are absolutely protected by governmental immunity. *See id*. at *3, *6; *Henry v. Sullivan*, No. 14-15-00161-CV, __, S.W.3d __, __, 2016 WL 1357584, at *5 (Tex. App.—Houston [14th Dist.] Apr. 5, 2016, no. pet. h.). Whether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of

26

authority at issue in any particular case. *Houston Belt & Terminal Ry. Co.*, 2016 WL 1312910, at *6; *see also City of Austin Firefighters' & Police Officers' Civil Serv. Comm'n v. Stewart*, No. 03-15-00591-CV, 2016 WL 1566772, at *2 (Tex. App.—Austin Apr. 14, 2016, no. pet. h.) (mem. op.).

In this regard, governmental immunity protects officials who act "consistently with the law, which includes those who act within their granted discretion." *Houston Belt & Terminal Ry. Co.*, 2016 WL 1312910, at *6. We look to applicable rules, ordinances, and statutes to determine whether an alleged act or failure to act fits within the narrow ultra vires exception. *See id.*; *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701–02 (Tex. App.—Austin 2011, no pet.); *Creedmoor–Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 n.8 (Tex. App.–Austin 2010, no pet.); *Hendee v. Dewhurst*, 228 S.W.3d 354, 368–69 (Tex. App.—Austin 2007, pet. denied); *see also Am. Sw. Ins. Managers, Inc. v. Tex. Dept. of Ins.*, No. 03-10-00073-CV, 2010 WL 4053726, at *5–6 (Tex. App.—Austin Oct. 15, 2010, no pet.) (mem. op.). Further, merely asserting legal conclusions or labeling a defendant's actions as ultra vires, illegal, or unconstitutional is insufficient to plead an ultra vires claim—what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed. *Tex. Dept. of Transp.*, 357 S.W.3d at 701–02; *Creedmoor–Maha Water Supply Corp.*, 307 S.W.3d at 515–16 & nn. 7–8. To this extent, the jurisdictional inquiry with respect to the appellees' purported ultra vires claims may overlap with the claims' merits. *Tex. Dept. of Transp.*, 357 S.W.3d at 702; *Creedmoor–Maha Water Supply Corp.*, 307 S.W.3d at 516 n.8.

In rendering its decision in April, the supreme court did not overrule any existing case law regarding application of the ultra vires doctrine but instead clarified and reinforced the narrow ultra vires standard previously pronounced by the court. Thus, we look to existing law for examples of cases where an official's interpretation of law or policy is ultra vires or not, depending on the grant of statutory authority. It is clear that not all alleged errors in interpretation of law or policy constitute ultra vires acts. *See, e.g., Creedmoor–Maha Water Supply Corp.*, 307 S.W.3d at 517–18 ("These are allegations that [the agency] reached an incorrect or wrong result when exercising its delegated authority, not facts that would demonstrate [the agency] exceeded that authority."); *MHCB (USA) Leasing & Fin. Corp. v. Galveston Cent. Appraisal Dist. Review Bd.*, 249 S.W.3d 68, 81 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Additionally, just because an agency determination is wrongly decided does not render that decision outside the agency's authority [because] an incorrect agency determination rendered pursuant to the agency's authority is not a determination made outside that authority."); *Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 430 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("Williams does not challenge the fact that the Fund has . . . this statutory authority. Regardless of his phrasing it in terms of 'authority' . . . , the crux of Williams's argument is that the trustees interpreted the statute in a way they should not have. This is a complaint of 'getting it wrong,' not of acting outside statutory authority."); *Tex. Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ) ("They had the undoubted authority to interpret the Act's provisions and to make a decision in that regard. That they 'might decide 'wrongly' . . . does not vitiate their authority to make a decision."); *N. Alamo Water Supply Corp. v. Tex.*

28

*Dep't of Health*, 839 S.W.2d 455, 458–59 (Tex. App.—Austin 1992, writ denied) (same); *see also Cameron Cnty. Appraisal Dist. v. Rourk*, No. 13-15-00026-CV, 2016 WL 380309, at *4 (Tex. App.—Corpus Christi Jan. 28, 2016, no pet.) (mem. op.) ("Likewise, we conclude that the substance of Rourk's amended allegations are complaints about Gomez's interpretation of the tax code, not that he acted illegally or without controlling authority. Rourk's allegations that Gomez failed to 'lawfully apply [a specific section of the tax code]' are analogous to a claim that he 'got it wrong.'").

Further, the failure to perfectly comply with all of the intricacies of the administrative process does not necessarily constitute extra-jurisdictional action by an agency. *Appraisal Review Bd. of Harris Cnty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding that an argument that agency hearings were being conducted in a manner that did not fully comply with statutory procedural requirements was not enough to invoke the ultra-vires exception); *Friends of Canyon Lake, Inc. v. Guadalupe–Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied) (holding that for an ultra vires exception to apply, "the environmental group was required to allege that the agency had acted wholly outside its jurisdiction, not merely that it had failed to meet certain statutory procedural requirements"); *Tex. Comm'n of Licensing & Regulation*, 953 S.W.2d at 292 (explaining that a claim that an agency had the authority to interpret a statute, but had interpreted a provision incorrectly was insufficient to invoke ultra-vires exception because the fact that it might interpret the provision incorrectly did not destroy its ability to make that determination); *see also Janek v. Gonzalez*, No. 03-11-00113-CV, 2013 WL 1748795, at *8 (Tex. App.—Austin Apr. 17, 2013, no pet.) (mem. op.) ("Although the Applicants

challenge the manner in which the Commissioner performs his duties and the timeliness of his actions, the complaints do not involve actions outside of the Commissioner's authority. Accordingly, allegations that the Commissioner is not fully complying with the regulatory requirements when performing these authorized duties are insufficient to invoke the ultra-vires exception.").

The appellees alleged ultra vires claims against Ledesma and Guzman because "they are following Board Policy of ECISD in their decision to exclude the class at issue for purposes of class ranking" and "the Defendants violated Board policy and acted without legal authority." As stated previously, merely asserting legal conclusions or labeling the appellants' actions as ultra vires does not raise an ultra vires claim—what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed. *See Tex. Dept. of Transp.*, 357 S.W.3d at 701–02. Appellees do not allege any other acts by Ledesma or Guzman, other than excluding the computer science class for class ranking purposes, that are beyond Ledesma and Guzman's authority and they do not complain of a failure to perform a ministerial act. They do not argue that the defendants violated any policy or statute other than the ECISD (Local) Policy.

In resolving this matter, we should be mindful that the Texas Supreme Court has iterated that: "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Nat'l Collegiate Athletic Assn v. Yeo*, 171 S.W.3d 863, 870 (Tex. 2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). This comports with the general rule in Texas that courts do not interfere with the statutorily conferred

30

duties and functions of an administrative agency. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex.1978); *Appraisal Review Bd. of Harris Cnty. Appraisal Dist.*, 267 S.W.3d at 418–19.

Under the relevant statutes, school boards have "the exclusive power and duty to govern and oversee the management of the public schools of the district," and under the "statutory scheme a school board must be the ultimate interpreter of its policy, subject to the limits established by the Legislature in its provisions for administrative and judicial review." *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000); *see* TEX. EDUC. CODE ANN. § 11.151(b) (West, Westlaw through 2015 R.S.) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district. All powers and duties not specifically delegated by statute to the agency or to the State Board of Education are reserved for the trustees, and the agency may not substitute its judgment for the lawful exercise of those powers and duties by the trustees."). In this regard, the TEA has made it clear that school districts set their own policy to determine class rank, it is a "local" decision, and that agency has "absolutely no say" in determining class rankings. *See Highest Ranking Graduate*, TEX. EDUC. AGENCY, http://tea.texas.gov/HRG (last visited May 25, 2016).

In this case, the appellees have not specifically pleaded or offered evidence to show that Ledesma or Guzman: lacked discretion to interpret and apply ECISD (Local) Policy; acted without legal authority or exceeded the bounds of their authority; or acted in conflict with the ECISD (Local) Policy or any other applicable law, policy, statute, or rule. Gutierrez, Guzman, and Ledesma repeatedly testified that they were required to follow ECISD (Local) Policy and that they lacked authority or discretion to count computer

science as a core class which could be included for class ranking purposes. In this regard, appellants conceded throughout the proceedings that they made a mistake when they advised Mariely and the other students at Robert Vela High School that the computer science dual enrollment 2904 class would count as a weighted class for purposes of class ranking. The appellants further testified that the appellees' requested relief of counting the computer science class as a weighted class for purposes of class ranking would require appellants to violate ECISD (Local) policy and other applicable laws.

There is no manifest conflict between ECISD (Local) Policy requiring ECISD to "include in the calculation of class rank semester grades earned in high school credit courses taken in grades 9-12 in the following subject areas only: English, languages other than English, mathematics, science, and social studies," and any other provision of the ECISD (Local) Policy, or any other statute or authority. *See Klumb*, 458 S.W.3d at 9–11. Based on the pleadings and the record, there are no indications that Ledesma and Guzman, in making the type of determination which they had authority to make, made that determination in a way the law did not allow. Governmental immunity protects exercises of discretion, and there is no factual pleading or evidence that Ledesma and Guzman acted beyond their granted discretion or without legal authority. Further, on April 22, 2016, the ECISD board of trustees upheld the Level II grievance decision, thereby determining that the 2904 computer science class should not be included for class ranking purposes.

Under these circumstances, where there is no manifest conflict between the policies, statutes, and codes referenced in this case, where the governmental body possesses broad discretionary authority to interpret its own policies, and the

32

governmental body agrees and approves the official's decisions and determinations, we conclude that the appellees have not successfully pleaded an ultra vires claim which would vest jurisdiction in the trial court.

Finally, to the extent that the appellees contend that the appellants' "mistake" constituted an ultra vires act, such mistake is not actionable because the plaintiffs seek relief for an act that has already been committed; that is, the relief they seek is retrospective. *See Heinrich*, 284 S.W.3d at 374–77. The appellees request that the appellants utilize the computer science dual enrollment class as a weighted class in calculating class ranks. However, the appellants determined that the class was not weighted, announced that determination to the students and parents, and have now calculated the class rankings in accordance with that determination. The appellees ultimately seek relief for acts that have already been committed. Thus, the ultra vires exception does not apply to the facts of this case. *See id.; see also Rubalcaba v. Raymondville ISD*, No. 13-14-00224-CV, 2016 WL 1274486, at *5 (Tex. App.—Corpus Christi Mar. 31, 2016, no. pet. h.) (mem. op.).

## VI. AMENDMENT OF PLEADINGS

The Texas Supreme Court held in *Miranda* that if the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. We have considered whether or not we should remand this case to the trial court to provide the appellees with an opportunity to attempt to cure the jurisdictional deficiencies in their pleadings. However, a party is not entitled to the

opportunity to cure a pleading defect when it is not possible to cure the defect. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Miranda*, 133 S.W.3d at 227; *Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 707–08 (Tex. App.—Austin 2013, no pet.); *see also Sefzik*, 355 S.W.3d at 623 (remanding to allow plaintiff to replead to assert ultra vires claim in light of the supreme court's holding in *Heinrich*, 284 S.W.3d 373).

In this case, the appellees had amended their petition three times before the trial court ruled on the pleas to the jurisdiction and had specifically alleged that Ledesma and Guzman violated ECISD (Local) Policy, but pointed to no other law, policy, statute or regulation which would delimit Ledesma and Guzman's discretion or authority to act. The evidence developed at the hearings in this matter was consistent with these allegations. Under these circumstances, amendment would not cure the jurisdictional defects present in this case. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *see also Rubalcaba*, 2016 WL 1274486, at *5 (concluding that plaintiff's jurisdictional claims against school district and officials for improperly weighting a course for grading and class rank purposes were incurable).

## VII. CONCLUSION

Based on the foregoing, we vacate the temporary order that we previously issued in these causes requiring the trial court's May 5, 2016 temporary injunction to remain in effect. In cause number 13-16-00253-CV, we reverse the trial court's order granting the temporary injunction and dissolve the temporary injunction. We reverse the trial court's denial of the pleas to the jurisdiction and render judgment dismissing appellees' claims

34

against ECISD, Ledesma, and Guzman for lack of jurisdiction. In cause number 13-16-00254-CV, we dismiss the petition for writ of injunction as moot.

As a final matter, we congratulate the exemplary academic efforts of Mariely Rebollar and Michael Reed and recognize these individuals as truly outstanding students. We extend our admiration to their parents who have clearly supported and encouraged these students in their commendable efforts. We are cognizant of the feelings of unfairness that are felt by both students and their families due to this unfortunate situation. However, this Court's power to act is not limitless. We are bound by the rule of law. *See, e.g., State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994) ("The very balance of state governmental power imposed by the framers of the Texas Constitution depends on each branch, and particularly the judiciary, operating within its jurisdictional bounds."); *Ex parte Hughes*, 129 S.W.2d 270, 273 (Tex. 1939) ("Under our judicial system our courts have such powers and jurisdiction as are defined by our laws constitutional and statutory."); *Messner v. Giddings*, 65 Tex. 301, 309 (1886) ("There is no such thing as the inherent power of a court, if, by that, be meant a power which a court may exercise without a law authorizing it.").

DORI CONTRERAS GARZA
JUSTICE

Delivered and filed the
26th day of May, 2016.

35